UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION


JOHN LOFFREDO, et al.,

          Plaintiffs,

   v.

DAIMLER AG, et al.,

          Defendants.

and

JOHN LOFFREDO, et al.,

          Plaintiffs,

   v.

CERBERUS CAPITAL MANAGEMENT, L.P., et al.,

          Defendants

Case No. 10-14181
Consolidated With
Case No. 10-14214

Honorable Julian Abele Cook, Jr.


<u>ORDER</u>

The Plaintiffs in this consolidated action[1] are retired executives of the Chrysler Corporation

("CC") and/or the DaimlerChrysler Corporation ("DCC"). Their complaints allege various state-law

---

[1]Case number 10-cv-14214, *Loffredo et al. v. Cerberus Capital Management, L.P. et al.* ("the *Cerberus* action") has been administratively closed pursuant to an order from this Court which consolidated it with *Loffredo et al. v. Daimler AG et al.* ("the *Daimler* action") under case number 10-cv-14181. Any motions that were pending in the *Cerberus* action at the time of consolidation have been re-filed on the *Daimler* action docket. Unless otherwise specified, all docket citations will refer to the docket in the *Daimler* action.

causes of action arising from their participation in the Supplemental Executive Retirement Plan ("SRP") of the CC and/or the DCC. Both complaints were originally filed in the Wayne County Circuit Court of Michigan and subsequently removed to this Court on the basis of its federal-question jurisdiction, 28 U.S.C. §§ 1331, 1441, and its diversity jurisdiction under the Class Action Fairness Act, 28 U.S.C. § 1332(d).[2]

The Defendants in the original *Cerberus* action were (1) Cerberus Capital Management, L.P. ("Cerberus"), a limited partnership with its principal place of business located in New York; (2) State Street Bank and Trust Company ("State Street"), a Massachusetts trust company; and (3) John Doe/Mary Roe, unidentified officers, partners, or managers of Cerberus and Chrysler LLC and administrators of the SRP. Pursuant to the parties' stipulation, Cerberus was subsequently dismissed without prejudice.

The Defendants in the *Daimler* action are (1) Daimler AG ("Daimler"), a stock corporation organized under the laws of Germany; (2) State Street; (3) Dieter Zetsche, a German resident who acted as a director, manager, trustee, or other officer of DCC; (4) Thomas LaSorda, a Michigan citizen who acted as a director, manager, trustee, or other officer of DCC; and (5) John Doe/Mary Roe, unidentified directors, managers, trustees, or other officers of DCC.

Currently before the Court are motions to dismiss filed by (1) State Street in the *Daimler* action (ECF No. 24) and the *Cerberus* action (ECF No. 40); (2) Daimler (ECF No. 25); and (3) LaSorda (ECF No. 26).

---

[2]One of the complaints was also removed to this Court on the basis of its diversity jurisdiction, 28 U.S.C. § 1332(a). However, this basis of removal was not applicable to the other complaint because one or more Defendants were Michigan citizens for diversity purposes.

I.      Statement of Facts[3]

In this consolidated action, the Plaintiffs seek to recover certain retirement benefits that were allegedly lost as a result of the bankruptcy action by Chrysler, LLC.

In 1998, the CC agreed to merge with Daimler Benz AG ("DBAG"), and, thereafter, to form Daimler Chrysler AG ("DCAG"). Pursuant to the terms of this merger, the CC was renamed DaimlerChrylser Corporation ("DCC") and became a wholly owned subsidiary of DCAG. In 2007, DCAG sold its majority interest in the DCC to Cerberus, which resulted in the renaming of the company as Chrysler LLC. In April 2009, Chrysler LLC, with the assistance of the United States Government, filed for a structured bankruptcy protection. The bankruptcy was structured so that all pensions and related trusts - *except* for the SRP and its associated trust - could survive the impact of a bankruptcy action. As a result, those Plaintiffs who had (1) reached the age of 62 prior to April 2009 and (2) already been receiving monthly retirement benefits from the SRP garnered their last such payment on April 1st of 2009. Those Plaintiffs who had not achieved the age of 62 years by April 1, 2009 will continue to receive their payments until they attained the age of 62 years.

In the *Daimler* action, the Plaintiffs complain that, upon learning of the planned CC-DBAG merger, they were concerned that their benefits would be at risk if the DCC became insolvent or filed for bankruptcy. At the time, they had the option of retaining their then-current work status or terminating their employment with the CC and immediately accessing certain vested retirement benefits. They further allege that, in order to prevent them from exercising this option, the CC

_____

[3]This statement of facts is drawn primarily from the Plaintiffs' two complaints.  For the purposes of the pending motions to dismiss, the Court accepts their well-pled factual allegations as being true. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010).

sought to obtain a written guarantee from DBAG that these benefits would not be lost in the event of insolvency or bankruptcy. In September 1998, Manfred Gentz, the Chief Financial Officer and a member of the Board of Management of DBAG, sent a letter to his counterpart at CC which described DBAG's general policy with respect to its affiliates' benefit plans.  The Plaintiffs assert that it was their collective understanding of the substance of this letter that DBAG/DCAG had ensured these employees that the trust would have sufficient assets to cover the SRP's obligations. In reliance upon these representations, the Plaintiffs elected to continue their employment with the CC/DCC following the merger rather than terminating their employment and immediately collecting some portion of their benefits.

The Plaintiffs also state that, in 2005 and/or 2006, the Defendants in the *Daimler* action used assets of the trust to purchase annuities or otherwise secure the SRP retirement benefits of plan participants who were then actively employed by DCC and certain retired employees. However, the DCC did not similarly securitize the benefits of the majority of former CC/DCC employees who had retired between 1998 and 2006 - a group that, on average, was older than the group of still-active employees. Finally, the Plaintiffs submit that, as of 2005 or 2006, these Defendants knew or believed that (1) Chrysler LLC was in serious financial trouble and in danger of filing for bankruptcy, and (2) the Plaintiffs had the option of withdrawing their vested SRP benefits prior to bankruptcy, but intentionally failed to disclose this information.

On the basis of these factual allegations, the Plaintiffs pled the following counts in the *Daimler* action: (1) promissory estoppel against Daimler; (2) breach of fiduciary duty against State Street, Zetsche, LaSorda, and Doe/Roe; (3) age discrimination against all Defendants; and (4) silent fraud against all Defendants.

4

In the *Cerberus* action, the Plaintiffs allege that the trust had assets in excess of $200 million at the time when Cerberus acquired a majority interest in the DCC. They further contend that Cerberus allowed the trust to be raided in such a manner that its assets were used for operational expenses, to fund buyouts, and for other corporate obligations. Thus, by the time that the Chrysler LLC filed for bankruptcy in April 2009, the remaining assets were reduced to a figure below three million dollars. The Plaintiffs also believe that, if the trust had been properly funded when the Chrysler LLC filed for bankruptcy protection, the United States Government would have allowed the trust to remain intact and their retirement benefits would have been continued.

Similar to the allegations in the *Daimler* action, the Plaintiffs assert that, as of 2008, these Defendants knew or had good reason to believe that the Chrysler LLC was in serious financial trouble and was in danger of filing for bankruptcy, but had intentionally failed to disclose this information. Moreover, it was their belief that the Defendants had a legal obligation to provide each of them with the option of withdrawing their vested SRP benefits prior to bankruptcy, and likewise intentionally failed to do so.

Based upon these factual allegations, the Plaintiffs pled the following counts in the *Cerberus* action: (1) silent fraud against all Defendants; (2) statutory conversion against all Defendants; (3)  breach of fiduciary duty against State Street and Doe/Roe; and (4) breach of fiduciary duty against Cerberus and Doe/Roe.

A few words are in order regarding the nature and structure of the type of benefit plan at issue. The Chrysler SRP - known as a "top-hat plan" - was created to provide added retirement security for certain highly-compensated employees beyond the benefits of the tax-qualified pension plan available to all employees. *See* 29 U.S.C. § 1051(2) (describing this type of plan as "a plan

5

which is unfunded and is maintained by an employer primarily for the purpose of providing deferred compensation for a select group of management or highly compensated employees"). The assets of the SRP were held in a "rabbi trust," a type of a nonqualified unfunded deferred compensation plan that is designed in such a way as to avoid any present taxation of its intended beneficiaries. *See generally* David B. Bruckman, *Implementing and Exiting Rabbi Trusts*, The CPA J. 34 (March 2003), *available at* http://www.nysscpa.org/cpajournal/2003/0303/features/f033403.htm. A plan is considered unfunded if contributions to it "are not specifically set aside and the plan consists of the employer's unsecured promise to pay compensation in the future, or if the assets are unprotected from the employer's creditors." *Id.* Because benefits in an unfunded plan remain subject to the risk of forfeiture, the beneficiaries are not deemed to be in constructive receipt of the contributions made to the plan, and thus cannot avoid any tax liability until such time as payment is actually received. *Id.* However, in return for this tax benefit, beneficiaries of such plans remain vulnerable to the risk of losing their benefits in the event of their employer's bankruptcy. *Id.* ("The trust's assets, however, remain available to creditors of the employer. Thus, the deposit of funds in a rabbi trust does not protect an employee from the employer's bankruptcy. . . . Assuming an employer is amenable to creating and funding a rabbi trust, the crucial issue before the employee is whether the economic benefit of the tax deferral outweighs the risk of employer insolvency."). It is specifically this risk that allows them to avoid any present tax liability on their employer's contributions to the plan.

Top-hat plans, such as the SRP here at issue, are governed by the Employee Income Retirement Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C.

§ 1001 et seq.) ("ERISA"), but are exempt from many of its provisions - notably, for present purposes, from its fiduciary duty provisions. *See* 29 U.S.C. §§ 1051(2) (exemption from accrual, vesting, spousal rights, and anti-alienation provisions); 1081(a)(3) (exemption from funding provisions); 1101(a)(1) (exemption from fiduciary responsibility provisions); 1321(b)(6) (exemption from plan termination insurance provisions). "Congress exempted top-hat plans from ERISA's requirements because high-level executives have the bargaining power to negotiate particular terms and monitor their interest under the plan, and therefore do not need substantive protections (the minimum standards of pension plan content) or fiduciary obligations." Peter J. Wiedenbeck, ERISA in the Courts 61 (Federal Judicial Center 2008).

II.    Standard of Review

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure,  a district court must accept the plaintiff's well-pleaded allegations as true and construe each of them in a light that is most favorable to it. *Bennett*, 607 F.3d at 1091. However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 129 S. Ct. 1937, 1949-50 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court

to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 129 S. Ct. at 1949. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

Moreover, "documents attached to the pleadings become part of the pleading and may be considered on a motion to dismiss." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). Specifically, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). When affidavits "'do nothing more than verify the complaint,' and when they 'add[] nothing new, but, in effect, reiterate[] the contents of the complaint itself,' they are not truly 'materials . . . outside the pleading.'" *Yeary v. Goodwill Industries-Knoxville, Inc.*, 107 F.3d 443, 445 (6th Cir. 1997) (citing *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993)). Also, supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song,* 985 F.2d at 842 (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

## III.   ERISA Preemption

In their respective motions to dismiss, the Defendants each argue that all of the Plaintiffs' state-law claims are wholly preempted by the Employee Income Retirement Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 et seq.) ("ERISA"). The Plaintiffs vigorously dispute this assertion.

Their exemption from many of ERISA's provisions notwithstanding, top-hat plans such as

8

the Chrysler SRP are governed by the enforcement and preemption provisions of ERISA. *Peters v. Lincoln Elec. Co.*, 285 F.3d 456, 467-68 and n.10 (6th Cir. 2002). "The purpose of ERISA is to provide a uniform regulatory regime over employee benefit plans. To this end, ERISA includes expansive pre-emption provisions . . . which are intended to ensure that employee benefit plan regulation would be exclusively a federal concern." *Aetna Health, Inc. v. Davila*, 542 U.S. 200, 208 (2004) (citations and internal quotation marks omitted). ERISA preempts state law claims in two distinct ways: (1) state law claims that could have been brought under ERISA's civil enforcement provision, 29 U.S.C. § 1132(a), are completely preempted and displaced by ERISA; and (2) and state law claims that relate to an employee benefit plan are expressly preempted by ERISA's preemption provision, 29 U.S.C. § 1144(a) (ERISA "supersedes any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" governed by ERISA); *see Warner v. Ford Motor Co.*, 46 F.3d 531 (6th Cir. 1995) (en banc); *C.C. Mid West, Inc. v. McDougall*, 990 F. Supp. 914, 918 (E.D. Mich. 1998).

The first form of preemption results from the determination that Congress, in creating a "comprehensive legislative scheme [that] includes an integrated system of procedures for enforcement," *Aetna*, 542 U.S. at 208, intended to completely preempt "any state-law cause of action that duplicates, supplements, or supplants the ERISA civil enforcement remedy," *id.* at 209. Complete preemption is an exception to the rule that federal question jurisdiction exists only where it is clear from the face of the complaint that the action arises under federal law. *Beneficial Nat'l Bank v. Anderson*, 539 U.S. 1, 8 (2003) "The ERISA civil enforcement mechanism is one of those provisions with such 'extraordinary pre-emptive power' that it 'converts an ordinary state common law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule.'"

9

*Aetna*, 542 U.S. at 209 (quoting *Metro. Life Ins. Co. v. Taylor*, 481 U.S. 58, 65-66 (1987)). Thus, "if an individual, at some point in time, could have brought his claim under ERISA § [1132(a)(1)(B)], and where there is no other independent legal duty that is implicated by a defendant's actions," the case - even though articulated in terms of state law - is removable to federal court. *Id.* at 208-10 (citation and internal quotation marks omitted) ("This is so because [w]hen the federal statute completely pre-empts the state-law cause of action, a claim which comes within the scope of that cause of action, even if pleaded in terms of state law, is in reality based on federal law."); *Peters*, 285 F.3d at 468 n.11 (citation and internal quotation marks omitted) ("[I]n order to come within the [complete preemption] exception a court must conclude that the common law or statutory claim under state law should be characterized as a superseding ERISA action to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan . . . ."); *C.C. Mid West*, 990 F. Supp. at 920 (interpreting Supreme Court and Sixth Circuit case law to extend this principle to all claims within scope of § 1132(a), not just § 1132(a)(1)(B)). When a claim which has been articulated as a state law claim is completely preempted by ERISA, the court should either (1) grant to the plaintiff leave to amend his complaint so as to assert the claims under ERISA or (2) construe the claim as if it had been pled under ERISA, subject to its substantive and procedural constraints. *E.g.*, *Ackerman v. Fortis Benefits Ins. Co.*, 254 F. Supp. 2d 792, 816 (S.D. Ohio 2003) (improper for federal court to dismiss a completely preempted claim as expressly preempted by ERISA; court instead must proceed with completely preempted claim under ERISA); *Henry v. Dow Jones*, No. 08 Civ. 5316, 2009 WL 210680, at *4 (S.D.N.Y. Jan. 28, 2009) ("When, as here, state law claims are preempted by ERISA's civil enforcement provisions [i.e., completely preempted], the proper

course of action is to treat the claims as if they had been asserted under ERISA.").

ERISA preemption under § 1144, on the other hand, does not convert a state law claim into a federal action for purposes of removal. Rather, it may be asserted as a defense in state court - or in federal court if subject-matter jurisdiction is otherwise proper. *Warner*, 46 F.3d at 53 ("Section 1144 allows ERISA to preempt state laws when they 'relate to' matters governed by ERISA but does not create a federal cause of action for matters which only 'relate to' ERISA's field of concern. Thus, § 1144 preemption does not create a federal cause of action itself, and cannot convert a state cause of action into a federal cause of action under the well-pleaded complaint rule. As a consequence, no removal jurisdiction exists under § 1144."). Claims that are expressly preempted must be dismissed with prejudice under traditional preemption principles. *See Briscoe v. Fine*, 444 F.3d 478, 501 (6th Cir. 2006) (abuse of discretion to dismiss expressly preempted state law claims without prejudice when dismissal with prejudice required).

ERISA's civil enforcement provision provides, in relevant part, as follows:

A civil action may be brought—

   (1) by a participant or beneficiary—

      . . .

      (B) to recover benefits due to him under the terms of his plan, to enforce his rights under the terms of the plan, or to clarify his rights to future benefits under the terms of the plan;

   (2) by the Secretary, or by a participant, beneficiary or fiduciary for appropriate relief under section 1109[4] of this title;

   (3) by a participant, beneficiary, or fiduciary

      (A) to enjoin any act or practice which violates any provision of this subchapter or the terms of the plan, or

      (B) to obtain other appropriate equitable relief

---

[4]This Section establishes liability for a breach of duty by a fiduciary. 29 U.S.C. § 1109.

11

(i) to redress such violations or

(ii) to enforce any provisions of this subchapter or the terms
of the plan.

29 U.S.C. § 1132(a). Thus, to the extent that the Plaintiffs' claims are within the scope of any of

these provisions, they are completely preempted. The various breach of fiduciary duty claims -

whether brought against ERISA fiduciaries or not - are clearly preempted by § 1132(a)(2). *See*

*Smith v. Provident Bank*, 170 F.3d 609, 613 (6th Cir. 1999) (breach of fiduciary duty claim

completely preempted regardless of whether defendant was fiduciary at time of alleged misconduct

because "it is the nature of the claim - breach of fiduciary duty - that determines whether ERISA

applies, not whether the claim will succeed").

It is also clear that the Plaintiffs' breach of fiduciary duty claims do not arise from any legal

duty independent of ERISA, the SRP, and the associated trust. Any duty that the Defendants may

have had to purchase annuities for all employees and retirees - rather than, as alleged, only a

particular subset thereof - "arose not out of an independent source of law, but out of the existence

and nature of the plan itself, including any duties that the plan imposed on the officers and

directors." *Briscoe*, 444 F.3d at 499. The same applies to any alleged duty (1) to offer the Plaintiffs

the option of withdrawing their benefits before either the merger or bankruptcy; and (2) on State

Street's part to use - or not use - the trust assets for particular purposes. Each of these duties could

only arise from, and can only be ascertained by reference to, the SRP and trust documents

themselves. Thus, the various breach of fiduciary duty claims are completely preempted under §

1132(a) and removal was therefore proper. Moreover, any claims that are not completely preempted

are within the supplemental jurisdiction of the Court. 28 U.S.C. §§ 1367, 1441(a).

12

The Plaintiffs submit that their breach of fiduciary duty claims are not preempted because - as all parties agree - top-hat plans such as the SRP are exempt from ERISA's fiduciary duty provisions. 29 U.S.C. §§ 1101-1114. They proclaim that the exemption of top-hat plans from these provisions means that their claims for breach of fiduciary duty are governed by state law and therefore are not preempted. The Defendants, on the other hand, argue that it is precisely because ERISA exempts these plans from its fiduciary duty provisions that plaintiffs cannot bring any - state or federal - breach of fiduciary duty claim against top-hat plan fiduciaries or administrators.

Courts in several circuits, including the Sixth Circuit, have determined that top-hat plan fiduciaries and administrators cannot be subject to state law breach of fiduciary duty claims because, "[h]ad Congress envisioned a cause of action for negligence or negligent breach of fiduciary duty against top-hat plan administrators or fiduciaries, the ERISA statute would provide for such a claim." *McZeal v. S. Consumers Coop, Inc.*, No. 05-1080, 2009 WL 1307943, at *10 (W.D. La. May 7, 2009) (citing *Great-West Life & Annuity Inc. Co. v. Knudson*, 534 U.S. 204, 209 (2002)). The same result obtains for any other state law claims that rely on those same alleged duties or obligations. *Id.* at 11  ("[A]lthough ERISA exempts [fiduciary] responsibilities from its requirements for top-hat plan administrators and fiduciaries, [plaintiff] is nevertheless not entitled to bring state law causes of action for these same breaches. To the contrary, it is because ERISA exempts top-hat administrators from fiduciary duties imposed on other plan administrators and fiduciaries that plaintiff cannot maintain a state law cause of action for negligence or negligent breach of fiduciary duty."); *see also, e.g.*, *Foley v. Am. Elec. Power*, 425 F. Supp. 2d 863, 868-69 (S.D. Ohio 2006) (ERISA fiduciary duty claim not cognizable with respect to top-hat plan, and state law claims of conversion, constructive trust, and breach of fiduciary duty relating to the

13

constructive trust dismissed as preempted by ERISA because they sought recovery of plan benefits and stemmed from plaintiff's participation in plan). Thus, the Plaintiffs' argument that their state law breach of fiduciary duty claims are not preempted because they would not be cognizable under ERISA is without merit. Moreover, to the extent that the Plaintiffs' remaining state law claims - silent fraud, statutory conversion, promissory estoppel, and age discrimination - are based upon allegations of a breach of a fiduciary duty, they are arguably not cognizable with respect to top-hat plans as they are simply attempts to relabel the breach of fiduciary duty claims.

In any event, the Plaintiffs' remaining state law claims are clearly expressly preempted by § 1144. This second type of ERISA preemption is even broader than the complete preemption approach. *Ackerman*, 254 F. Supp. 2d at 816 n.22 ("There is no dispute in the case law that claims which can be brought under § [1132(a)] constitute a much smaller category of claims than that of claims which 'relate to' ERISA plans and are thus traditionally preempted by § [1144(a)]."). ERISA's preemption provision provides that ERISA "shall supersede any and all State laws insofar as they may now or hereafter relate to any employee benefit plan [governed by ERISA]." 29 U.S.C. § 1144(a). The Supreme Court has stated that this provision is "deliberately expansive, and designed to establish pension plan regulation as exclusively a federal concern." *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 45-46 (1987).

Although earlier decisions of the Supreme Court attributed to the phrase "relate to" its broadest possible meaning, more recent decisions have somewhat narrowed the preemptive scope. *See Penny/Ohlmann/Nieman, Inc. v. Miami Valley Pension Corp.*, 399 F.3d 692, 697 (6th Cir. 2005) ["*PONI*"] (describing evolution of doctrine). Courts must look to the purposes and goals of ERISA to determine whether Congress intended particular state law claims to survive. "The

14

purpose of ERISA preemption was to avoid conflicting federal and state regulation and to create a nationally uniform administration of employee benefit plans. Thus, ERISA preempts state laws that (1) mandate employee benefit structures or their administration; (2) provide alternate enforcement mechanisms; or (3) bind employers or plan administrators to particular choices or preclude uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself." *Id.* at 698 (citation and internal quotation marks omitted); *see also Lee v. Sheet Metal Workers' Nat'l Pension Fund*, 697 F. Supp. 2d 781, 785 (E.D. Mich. 2010) ("[W]here the cause of action is dependent on the existence of the plan, or seeks to enforce a right to benefits created by the plan, courts have had little trouble concluding that the relief sought relates to the plan, and therefore the state law claims must yield and the claimant is left to the remedies ERISA provides."). The Sixth Circuit has recently described the process for analyzing § 1144 preemption as beginning with a determination of whether the claim falls within one of the three *PONI* categories of claims that ERISA clearly preempts; if the claim does not, then courts "continue to follow our prior precedent that focuses on the nature of the remedy sought by a plaintiff." *Thurman v. Pfizer, Inc.*, 484 F.3d 855, 861 (6th Cir. 2007). However, "Congress did not intend . . . for ERISA to preempt traditional state-based laws of general applicability that do not implicate the relations among the traditional ERISA plan entities, including the principals, the employer, the plan, the plan fiduciaries, and the beneficiaries." *PONI*, 399 F.3d at 698 (citation and internal quotation marks omitted).

The relief sought in each of the Plaintiffs' claims is a recovery of the SRP benefits that were lost due to the Defendants' alleged misconduct. (*See* Cerberus Compl. at ¶¶ 39-42 (describing injury in silent fraud claim as loss of retirement SRP benefits); ¶ 52 (describing damages in

statutory conversion claim as "equal to the amount of the benefits that they would have received from the SRP had Defendants not converted the assets of the [r]abbi [t]rust"); ¶ 69 ("As a direct result of [State Street's] and Other Fiduciaries' breach of fiduciary duty, Plaintiffs suffered the loss of their SRP retirement benefits . . . ."); Daimler Compl. at ¶ 12 (in promissory estoppel claim, requesting enforcement of Daimler's  promise along with commitment that Daimler "satisfy all of the SRP retirement benefits that have been prior [sic] to the bankruptcy filing"); ¶ 82 ("As a direct result of [State Street's] and Other Fiduciaries' breach of fiduciary duty, Plaintiffs have lost all or a portion of their SRP retirement benefits."); 91 (in age discrimination claim, stating that, "[a]s a direct and proximate result of Defendants' acts, Plaintiffs have suffered and will continue to suffer loss of benefits, mental distress and attorney fees."); ¶ 105 (in silent fraud claim, stating that, "[a]s a result of Defendants' fraudulent representations, Plaintiffs were injured as described in paragraphs 42 and 43 [describing loss of SRP benefits] herein")).

This is not a case where the lost benefits are merely an element of their claimed damages, incidental to some other wrongful conduct by the defendants. *Cf. Peters*, 285 F.3d at 469 (distinguishing claims seeking to recover benefits due under an ERISA plan from claims for, for example, wrongful discharge, for which lost benefits are merely one element of the damages sought). Instead, the Plaintiffs' claims "fall[] squarely within § 1132(a) as [they] seek[] to 'recover benefits due to [them] under the plan' or 'clarify [their] rights to future benefits under the terms of the plan.' It is not the label placed on a state law claim that determines whether it is preempted, but whether in essence such a claim is for the recovery of an ERISA plan benefit." *Id.* (quoting *Cromwell v. Equicor-Equitable HCA Corp.*, 944 F.2d 1272, 1275 (6th Cir. 1991)); *see also Henry*, 2009 WL 210680, at *4 ("Through each of these claims, plaintiff is seeking precisely the same

thing: benefits allegedly owed under the Separation Plan. [Plaintiff] is barred from avoiding ERISA's exclusive enforcement regime by recasting an action for ERISA benefits as a set of state law causes of action. Because [Plaintiff] is seeking to secure benefits under an ERISA plan through the use of 'alternate enforcement mechanisms' rather than ERISA's enforcement provisions, [Plaintiff's] state law claims are preempted.").

As discussed above, all of the Plaintiffs' claims seek to recover SRP benefits and/or enforce the terms of the SRP and necessarily depend on the existence of the plan, and therefore their causes of action seek to provide an alternate mechanism of enforcement of the SRP. *See Lerner v. Elec. Data Sys. Corp.*, No. 07-1730, 2009 WL 579345 (6th Cir. Mar. 9, 2009) (where plaintiff sought payment of disability insurance benefits, state-law claims for breach of contract, fraudulent misrepresentation, and innocent misrepresentation "relate to" ERISA plan and therefore were preempted); *Smith*, 170 F.3d at 615 (beneficiary's common law claims for conversion, negligence, trover, replevin, destruction of evidence, misrepresentation, and bad faith preempted because they "merely attach new, state-law labels to the ERISA claims for breach of fiduciary duty and recovery of benefits, for the apparent purpose of obtaining remedies that Congress has chosen not to make available under ERISA").

The Plaintiffs - although citing *PONI* for other propositions - neither address the three categories of preempted state laws delineated in that case nor dispute that their claims merely seek to provide alternate enforcement mechanisms. Instead, they rely upon a two-step analysis purportedly articulated by the Second Circuit in *Stevenson v. Bank of New York Co.*, 609 F.3d 56, 60-61 (2d Cir. 2010) (whether (1) the asserted liability under state law derives from particular rights and obligations established by ERISA plan; and (2) the state law causes of action purport to require

a plan administrator, employer, or beneficiary to follow a standard inconsistent with those provided by ERISA). However, a closer reading of *Stevenson* makes clear that the Second Circuit did not establish these two elements as a general - and the exclusive - inquiry to be applied in ERISA preemption situations. Rather, those two factors were set out as the reasons why the particular state law claims were not preempted in the specific context of that case. In any event, this test - if indeed it could be called a test - has not been adopted in this Circuit.

The Plaintiffs also contend that their claims against Daimler and LaSorda cannot be preempted because these two Defendants were not parties to the SRP. They state that "where an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law." (Pls.' Resp. to Mot. to Dismiss in Daimler Action at 15 (quoting *PONI*, 399 F.3d at 698)). As both Daimler and LaSorda point out, however, this is an inaccurate rendering of the holding in *PONI*. There, the Sixth Circuit held that an employer's claims against a company that provided record-keeping services for an ERISA-governed plan was not preempted by ERISA because (1) the third-party service provider was not a traditional ERISA plan entity, (2) the employer's cause of action did not fall within any of the three categories delineated above, and (3) the claim was not based on any rights under the plan and did not allege any breach of the plan's terms. *PONI*, 399 F.3d at 700-01. The court explicitly recognized that a "suit against a non-fiduciary to recover plan benefits seeks to create an alternative to ERISA's enforcement mechanism, and accordingly is preempted under § [1144(a)]." *Id.* at 702; *see also id.* at 701 n.5 ("Parties may not circumvent the ERISA statutory scheme through state-law causes of action against non-fiduciaries to recover plan benefits."). In *Smith*, the case that *PONI* cites for the proposition that "when an ERISA plan's relationship with another entity is not governed by ERISA, it is subject to state law," the court was

18

very clear that it was speaking exclusively to claims brought by ERISA plans as opposed to ERISA participants. Indeed, the court determined that, even though an ERISA plan's state-law claims against non-fiduciaries were not preempted, those exact claims brought by an ERISA participant were preempted. *See Smith*, 170 F.3d at 615-17 (citing *Pedre Co., Inc. v. Robins*, 901 F. Supp. 660, 666 (S.D.N.Y. 1995)) ("ERISA preempts claims against fiduciaries and claims by participants against nonfiduciaries, but not claims against nonfiduciaries by plans and their sponsors and trustees."). Likewise, in *PONI*, the court expressly distinguished a claim, like this one, brought by employees/beneficiaries - which would be preempted - from a claim brought by employers - which, there, was not preempted. *See PONI*, 399 F.3d at 702 and n.5. Here, the Plaintiffs, as ERISA participants, cannot avoid preemption by an appeal to the distinguishable factual circumstances in *Smith* and *PONI*.

These claims are not saved from preemption merely because they might not be able to be brought under ERISA as against these particular Defendants. *Smith*, 170 F.3d at 615. ("Regardless of the availability of an ERISA action against particular defendants, the relief provided by ERISA is the only relief available for the [state law claims that the plaintiff-beneficiary] alleges."). Moreover, the Plaintiffs state that "ERISA's civil enforcement provision does not contain any limitation as to the parties from whom the Plaintiffs' may pursue relief thereunder. . . .  Therefore, if necessary, Plaintiffs may re-plead their claims against all Defendants, including Daimler and LaSorda, even [though] Daimler and LaSorda are not parties to the SRP." (Pls.' Resp. to Mot. to Dismiss in Daimler Action at 20-21). Thus, they seem to argue that the relationship with these two Defendants simultaneously is governed by ERISA for the purposes of stating a claim against them under ERISA, and is not governed by ERISA for the purposes of ERISA preemption. The Court

19

does not agree.

The Plaintiffs cannot successfully argue that their claims do not seek to provide - either directly or by an alternative enforcement mechanism - relief as contemplated by § 1132(a). In their responses to the pending motions, they address preemption only with respect to the express preemption provision of § 1144 and make no argument whatsoever with respect to complete preemption under § 1132(a). Indeed, they argue that, if the Court determines that their claims are preempted by § 1144, the Court should proceed with their claims as if they had been brought under ERISA's civil enforcement provision or permit them to re-plead their claims under ERISA. Moreover, they acknowledge that it was the SRP and related trust - as opposed to a legal duty independent of the plan - that gave rise to the duties that were allegedly violated. (Pls.' Resp. to Defs.' Mot. to Dismiss in *Daimler* Action at 21 ("[I]n the event that this Court finds that any of Plaintiffs' claims are preempted by ERISA, Plaintiffs should be permitted to re-plead their claims under Section 1132(a)(1)(B) or ERISA in order to enforce their rights under the SRP and the Rabbi Trust, and to recover the benefits which they have lost as a direct and proximate result of Defendants' conduct in violation of the terms of the SRP and the Rabbi Trust."); *id.* at 22-23 (arguing that, if their claims are preempted, they "should be entitled to re-plead their claims in order to seek appropriate equitable relief, including equitable restitution and an accounting, pursuant to Section 1132(a)(3)"); Pls.' Resp. to Def.'s Mot. to Dismiss in *Cerberus* Action at 15, 16 (same)). Thus, they explicitly acknowledge that which the Court has determined; to wit, their claims are "in essence [claims] for the recovery of an ERISA plan benefit," *Smith*, 170 F.3d at 615, and are, therefore, preempted by ERISA.

For the reasons that have been outlined above, the Court concludes that all of the claims

asserted by the Plaintiffs are preempted by ERISA. The breach of fiduciary duty claims are completely preempted because they fall within the scope of ERISA's civil enforcement mechanism, and the remaining state law claims are expressly preempted by § 1144 because they seek to provide an alternate enforcement mechanism. Because  the breach of fiduciary duty claims are completely preempted, only those claims warrant consideration under the standards governing ERISA. The remaining state law claims must be, and are, dismissed with prejudice. *See Ackerman*, 254 F. Supp. 2d at 816.

IV.     Plaintiffs' Claims Cannot Succeed Under ERISA

It is clear that these fiduciary duty claims could not succeed under ERISA even if the Plaintiffs were given leave to amend their complaint.[5] An action brought pursuant to ERISA must fall within one of the civil enforcement provisions of § 1132(a) quoted above. However, they would not be entitled to relief as against these Defendants under any of these provisions. The Plaintiffs, through their counsel, appeared to concede as much during oral argument when they acknowledged that, "had we filed an ERISA claim . . . we would have had a big problem because [the Defendants] weren't signers of the ERISA [plan]." (Hr'g Tr. 59:5-6, Apr. 12, 2011).

Claims for benefits due under an ERISA plan, § 1132(a)(1)(B), are governed by the federal common law of contracts. *Lockett v. Marsh USA, Inc.*, 354 Fed. Appx. 984, 989 (6th Cir. 2009) (unpublished) ("In interpreting ERISA plans [for purpose of § 1132(a)(1)(B) claim,] we apply federal common law rules of contract interpretation and give effect to the unambiguous terms of

---

[5]Although these claims are denominated as "breach of fiduciary duty" claims, the Court - in recharacterizing them as ERISA claims - need not confine itself to a consideration of only § 1132(a)(2). Rather, it will consider whether the Plaintiffs' allegations which underlie their claims could state a claim under any of the ERISA civil enforcement provisions.

the plan."); *Foley*, 425 F. Supp. 2d at 870 (citations omitted) ("Since top hat plans are exempt from

much of ERISA . . . , contract principles, applied as a matter of federal common law, govern

disputes that arise with respect to plan administration and enforcement."). Under this standard, the

Plaintiffs' recharacterized claim fails for many independently sufficient reasons.

    None of the named Defendants in this action were signatories of the SRP. Moreover, the

SRP gave exclusive authority to the CC Employee Benefits Committee to operate and administer

the SRP,  *see* SRP §§ 2.10, 8.01, attached as Ex. A to Daimler's Mot. to Dismiss.[6] Significantly,

none of the Defendants are alleged to be members of this Committee. The rabbi trust provides that

the following entities are to be the fiduciaries who are designated to control, manage, and

administer the trust: namely, the Board of Directors, the Employee Benefits Committee, the Pension

Fund Review Committee, any investment manager, and the Trustee. *See* Trust § 2.2, attached as

Ex. B. to Daimler's Mot. to Dismiss. Thus, none of the named Defendants had any role whatsoever

in the management or the administration of the SRP - and only State Street had any role with

respect to the trust. Furthermore, a claim for benefits under § 1132(a)(1)(B) will lie only against

--------

[6]The Plaintiffs argue that the Court should not consider the plan and trust documents in
this action because - despite having referred to these instruments in the complaint, all of which
appear to be central to their claims, *Weiner, D.P.M.*, 108 F.3d at 88 n.3 - none of them are
"indisputably authentic." (*See* Pls.' Resp. to Mot. to Dismiss in *Cerberus* Action at 7). However,
as State Street aptly points out, the Sixth Circuit has not adopted the "indisputably authentic"
requirement. *See Bassett*, 528 F.3d at 430 ("When a court is presented with a Rule 12(b)(6)
motion, it may consider the Complaint and any exhibits attached thereto, public records, items
appearing in the record of the case and exhibits attached to defendant's motion to dismiss so long
as they are referred to in the Complaint and are central to the claims contained therein."). 
Although the Plaintiffs cite *Bassett* as standing for the inclusion of the "indisputably authentic"
requirement, it does not support such a reliance. Moreover, the Plaintiffs have not provided the
Court with any reason to doubt the authenticity of these documents. Simply stating that they had
not seen the trust and SRP documents prior to the commencement of this litigation is an
insufficient basis from which to cast any genuine doubt.

the plan or its administrators or trustees. *See Paneccasio v. Unisource Worldwide, Inc.*, 532 F.3d
101, 108 n.2 (2d Cir. 2008). Thus, with the possible exception of State Street, these claims cannot
be brought against these Defendants.

Much of the alleged misconduct upon which the Plaintiffs' claims are based is conduct that
is specifically permitted or even mandated by the terms of the SRP and trust. Thus, even if these
claims had been brought against the proper parties, it appears that they would not be able to prevail
in this litigation. The SRP explicitly states that (1) "[T]he Corporation may at any time, and from
time to time, substitute an individual annuity contract . . . for all or any portion of the benefits of
any Employee . . . ," SRP § 4.15 A; (2) "[N]o Annuity shall permit an Employee to surrender such
Annuity and receive a lump sum payment equal to the cash value of the Annuity, provided,
however, that the Board Committee (or its delegate) may offer to any or every Employee the
opportunity to receive, in lieu of an Annuity, a lump sum distribution . . . ," SRP § 4.15 D; and (3)
"If the Board Committee elects to distribute retirement benefits in the form of an Annuity to, or
permit a lump sum option to be exercised by, any Employee or class of Employees pursuant to this
Section 4.15, the Board Committee shall not be obligated or otherwise required to provide an
Annuity or a lump sum to each Employee or to all similarly situated Employees," SRP § 4.15 E.
Thus, by the clear terms of the SRP, the Board Committee was under no obligation to purchase
annuities or otherwise secure any employee's benefits or offer any employee the option of receiving
a lump sum payout in lieu of an annuity. Moreover, doing so for any group of employees did not
obligate the Board Committee to do so for any other employee. In addition, the SRP was amended
to bring it into compliance with the Internal Revenue Code so that, as of January 2006, employees
were not permitted to elect to receive Incentive Compensation Retirement Benefits in a lump sum.

*See* SRP Amendment No. 5 (2005) at 5. Because of the nature of the SRP and rabbi trust here at issue, the Board Committee did not have any legal obligation to protect employee benefits thereunder from creditors in the event of insolvency. Indeed, as discussed above, the funds were required to be at risk of loss in a bankruptcy proceeding in order to take advantage of the desired tax deferral. And, under the terms of the trust, State Street was obligated to suspend payments to SRP beneficiaries upon notice of insolvency. Trust §§ 2.9(b); 5.5 ("Since the assets of the Trust are, in the event of Insolvency, subject to the claims of Insolvency Creditors, the Trustee shall suspend further payments to Plan participants and beneficiaries . . . ."). [7] It is thus clear to the Court that the Plaintiffs cannot state a cognizable claim for relief under § 1132(a)(1)(B) against these Defendants.

The Court can quickly dispose of the second category - actions for breach of fiduciary duty - because, as noted above, top-hat plans are not subject to ERISA's fiduciary provisions. Therefore, the Plaintiffs cannot state any claims under this provision.

Finally, the Plaintiffs argue, as a viable option, that they should be permitted to re-plead their claims to seek appropriate equitable relief under § 1132(a)(3)(B) (permitting civil actions by beneficiaries "to obtain other appropriate equitable relief (i) to redress [ERISA or ERISA plan] violations or (ii) to enforce any provisions of this subchapter or the terms of the plan."). Noting that this section has been interpreted to allow claims for those categories of relief that were traditionally

_____

[7]In light of the clear failures of this claim, the Court need not consider the Defendants' additional arguments; namely, that the Plaintiffs' claims are barred by (1) a waiver and release of any claims against members of the Board Committee, stockholders, officers, or directors of the CC, *see* SRP § 10.07, and (2) their alleged failure to exhaust their administrative remedies, as required under § 1132(a)(1)(B). Moreover, the Court need not address the Defendants' arguments that all of the Plaintiffs' state law claims - even if they were not preempted - fails to plead good and sufficient facts to survive a 12(b)(6) motion under the standards articulated in *Twombly* and *Iqbal* and the heightened pleading standard that applies to fraud claims, Fed. R. Civ. P. 8, 9, 12.

24

available in equity, *see Mertens v. Hewitt Assocs.*, 508 U.S. 248, 256 (1993), the Plaintiffs submit that they can seek equitable restitution and/or an accounting. The Defendants counter that, because what the Plaintiffs seek is, in actuality, money damages available under § 1132(a)(1)(B), they cannot simply disguise their legal claims as equitable claims to shoehorn them into § 1132(a)(3). The Court agrees.

Not all restitutionary claims are equitable in nature. In *Mertens*, for example, the Supreme Court held that a claim which sought "nothing other than compensatory damages," irrespective of the plaintiffs' attempt to describe it as equitable, cannot be brought under § 1132(a)(3). 508 U.S. at 255 (emphasis omitted) ("Although they often dance around the word, what petitioners in fact seek is nothing other than compensatory damages - monetary relief for all losses their plan sustained as a result of the alleged breach of fiduciary duties. Money damages are, of course, the classic form of legal relief."). Courts have determined that restitution is equitable in nature where the plaintiff seeks to impose a constructive trust or constructive lien on particular property in the defendant's possession and legal in nature where it seeks to impose upon the defendants personal liability for a contractual obligation. *Sereboff v. Mid Atlantic Med. Servs., Inc.*, 547 U.S. 356, 362 (2006) (quoting *Great-West*, 534 U.S. at 214). "[R]estitution is considered equitable relief ordinarily in the form of a constructive trust or an equitable lien, where money or property identified  as belonging in good conscience to the plaintiff could clearly be traced to particular funds or property in the defendant's possession." *Afridi v. Nat'l City Bank*, 509 F. Supp. 2d 655, 660-61 (N.D. Ohio 2007) (citation and internal quotation marks omitted). On the other hand, "where the property sought to be recovered or its proceeds have been dissipated so that no product remains, the plaintiff's claim is only that of a general creditor imposing personal liability on the

25

defendant." *Id.* at 661. Here, there is no allegation that the funds are in the possession of any Defendant. To the contrary, the Plaintiffs claim that the funds were wrongly dissipated in the payment to the CC's creditors and for other corporate obligations. Instead, the Plaintiffs seek to impose personal liability upon the Defendants for perceived violations of the terms of the SRP and trust. Thus, the relief that they seek is legal, not equitable, in nature, and therefore cannot be brought under § 1132(a)(3).

The Eighth Circuit, in noting that equitable restitution and compensatory awards are also distinguished on the basis of the source and goal of the award sought, concluded several years ago that "an equitable restitutionary award focuses on the defendant's wrongfully obtained gain while a compensatory award focuses on the plaintiff's loss at the defendant's hands. Restitution seeks to punish the wrongdoer by taking his ill-gotten gains, thus, removing his incentive to perform the wrongful act again. Compensatory damages on the other hand focus on the plaintiff's losses and seek to recover in money the value of the harm done to him." *Kerr v. Charles F. Vatterott & Co.*, 184 F.3d 938, 944 (8th Cir. 1999); *see also Helfrich v. PNC Bank, Ky., Inc.*, 267 F.3d 477, 481-83 (6th Cir. 2001) (quoting with approval and applying this passage of *Kerr* by holding that claim labeled as "restitution" could not be brought under § 1132(a)(3) because it was measured by reference to plaintiff's losses rather than defendant's gains - "the hallmark of money damages"). By this test, too, the Plaintiffs' claim for relief is clearly legal in nature.

The Plaintiffs' argument that they can bring an equitable action for an accounting fails for similar reasons. Here, too, they seek the benefits that they lost - not profits that the Defendants may have garnered from any ill-gotten gains. *See Parke v. First Reliance Standard Life Ins. Corp.*, 368 F.3d 999, 1008 (8th Cir. 2004) ("An accounting is imposed when the property subject to the

constructive trust produces profits while in the defendant's possession."). Thus, the Plaintiffs cannot state a claim for an accounting under § 1132(a)(3).

In summary, because the Plaintiffs' breach of fiduciary duty claims are completely preempted by ERISA, the Court has construed their allegations as if the claims had been brought under ERISA. Finding that their claims do not state a claim for relief under ERISA's civil enforcement mechanism, the Court concludes that any attempt by the Plaintiffs to re-plead their claims under ERISA would be futile.

V.   Conclusion

In light of the many shortcomings of the Plaintiffs' claims, the Court concludes that (1) the Defendants' motions to dismiss (ECF Nos. 24, 25, 26, and 40) are meritorious, and (2) the Plaintiffs' complaints are to be dismissed with prejudice as to State Street, Daimler, and LaSorda for their failure to state a claim upon which relief can be granted.

Furthermore, the complaint in the *Cerberus* action is dismissed in its entirety. As for the Plaintiffs' claims in the *Daimler* action, the Court notes that one Defendant (Zetsche) remains as an active litigant in this case because he has not filed a dispositive pleading. In addition, there is no evidence that he has been properly served with a copy of the complaint and a summons in this action. In fact, the docket in this case reflects that (1) his motion to quash the original summons was granted (ECF No. 20), (2) a new summons was issued for him on November 18, 2010 (ECF No. 21), and (3) no record of any service of this new summons upon him has been filed.

Finally, the Court notes that the Plaintiffs' complaints against Zetsche and LaSorda are identical in every respect. Thus, it is difficult to imagine that the Plaintiffs' claims against Zetsche

27

can succeed where the identical claims against an identically-situated Defendant had failed. Nevertheless, before dismissing the complaint as against Zetsche *sua sponte*, the Court will allow the Plaintiffs a period of ten (10) days from the date of this order to show cause why the complaint should not be dismissed as to Zetsche for failure to state a claim upon which relief can be granted. Upon the expiration of that time period, and in the absence of a legally plausible explanation by the Plaintiffs, the Court will enter an order of dismissal.

IT IS SO ORDERED.


Dated:   June 6, 2011                           s/Julian Abele Cook, Jr.
         Detroit, Michigan                      JULIAN ABELE COOK, JR.
                                                United States District Court Judge


### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on June 6, 2011


                                                s/ Kay Doaks
                                                Case Manager


28