UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF MICHIGAN

JOHN LOFFREDO ET AL,

       Plaintiffs,

v

                                 Case No. 2:10-cv-14181-JAC-VMM
                                 Hon. Julian A. Cook
                                 Magistrate Judge Virginia M. Morgan

DAIMLER AG, a foreign corporation,
STATE STREET BANK AND TRUST COMPANY,
a Massachusetts Trust Company,
DIETER ZETSCHE, an individual,
THOMAS LASORDA, an individual,
JOHN DOE and MARY ROE, individuals,

       Defendants.

                                                                               /

Sheldon L. Miller (P17785)
LAW OFFICES OF SHELDON MILLER
**Attorneys for Plaintiffs**
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
(248) 538-3400
(248) 538-5280 Fax

Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
MORGANROTH & MORGANROTH, PLLC
**Co-Counsel for Plaintiffs**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000
(248) 864-4001 Fax

Lawrence G. Campbell (P11553)
Thomas G. McNeill (P36895)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
**Attorneys for Daimler AG, Dieter Zetsche and
Thomas Lasorda**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
(313) 223-3598 Fax

Alan S. Goudiss
Jaculin Aaron
SHEARMAN & STERLING LLP
**Attorneys for Daimler AG and Dieter Zetsche**
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

J. Timothy Mast
TROUTMAN SANDERS LLP
**Attorney for Thomas Lasorda**
600 Peachtree Street, NE Suite 5200
Atlanta, GA 30308-2216
(404) 885-3312

Wilbur H. Boies
Nancy G. Ross
MCDERMOTT WILL & EMERY LLP
**Attorneys for State Street Bank & Trust, Co.**
227 W. Monroe Street
Chicago, IL 60606
(312) 984-7686

Abraham Singer (P23601)
James D. VandeWyngearde (P58634)
PEPPER HAMILTON LLP
**Attorneys for State Street Bank & Trust, Co.**
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110

---

## PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

Plaintiffs, John Loffredo, et al (collectively "Plaintiffs"), by and through their attorneys, hereby seek leave from this Court to file their First Amended Complaint pursuant to Fed. R. Civ. P. 15 and L.R. 15.1, and state as follows:

1. Plaintiffs have prepared a proposed First Amended Complaint (Plaintiffs' "FAC") which is attached hereto as **Exhibit 1**.

2. Plaintiffs' FAC incorporates claims against Defendants, Daimler AG ("Daimler"), State Street Bank and Trust Company ("State Street") and Thomas LaSorda's ("LaSorda") (sometimes collectively referred to as "Defendants"), based upon Defendants' failure to comply with the terms of the SRP and Rabbi Trust agreements.

3. Plaintiffs' FAC also seeks to add a number of additional individuals who are Chrysler retirees and similarly situated to the existing Plaintiffs as Plaintiffs in this lawsuit, and to correct the spelling of the names of several other individuals who are named as Plaintiffs in the original Complaint.

1

4.     Plaintiffs obtained copies of the SRP and Rabbi Trust agreements for the first time in December 2010 when Defendants moved to dismiss this case pursuant to Rule 12.

5.     Plaintiffs sought concurrence in connection with the instant motion from counsel for Defendants on January 9, 2013 and February 20, 2013.  Such concurrence was not provided.

WHEREFORE, Plaintiffs respectfully request that this Court GRANT the instant Motion, and enter an order granting Plaintiffs leave to file their proposed FAC, which is attached hereto as **Exhibit 1.**

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/Mayer Morganroth
MAYER MORGANROTH (P17966)
JEFFREY M. THOMSON (P72202)
Counsel for Appellants
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: mmorganroth@morganrothlaw.com

LAW OFFICES OF SHELDON MILLER
SHELDON L. MILLER (P17785)
Counsel for Appellants
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
Dated:  February 22, 2013                    (248) 538-3400

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF MICHIGAN

JOHN LOFFREDO ET AL,

       Plaintiffs,

v                                     Case No. 2:10-cv-14181-JAC-VMM
                                      Hon. Julian A. Cook
                                      Magistrate Judge Virginia M. Morgan

DAIMLER AG, a foreign corporation,
STATE STREET BANK AND TRUST COMPANY,
a Massachusetts Trust Company,
THOMAS LASORDA, an individual,
JOHN DOE and MARY ROE, individuals,

       Defendants.

_____ /

| | |
|---|---|
| Sheldon L. Miller (P17785) | Mayer Morganroth (P17966) |
| LAW OFFICES OF SHELDON MILLER | Jeffrey B. Morganroth (P41670) |
| **Attorneys for Plaintiffs** | MORGANROTH & MORGANROTH, PLLC |
| 31731 Northwestern Hwy., Ste. 280W | **Co-Counsel for Plaintiffs** |
| Farmington Hills, MI 48334 | 344 North Old Woodward Avenue |
| (248) 538-3400 | Suite 200 |
| (248) 538-5280 Fax | Birmingham, MI 48009 |
| | (248) 864-4000 |
| | (248) 864-4001 Fax |
| | |
| Lawrence G. Campbell (P11553) | Alan S. Goudiss |
| Thomas G. McNeill (P36895) | Jaculin Aaron |
| L. Pahl Zinn (P57516) | SHEARMAN & STERLING LLP |
| DICKINSON WRIGHT PLLC | **Attorneys for Daimler AG and Dieter Zetsche** |
| **Attorneys for Daimler AG, Dieter Zetsche and** | 599 Lexington Avenue |
| **Thomas Lasorda** | New York, NY 10022 |
| 500 Woodward Avenue, Suite 4000 | (212) 848-4000 |
| Detroit, MI 48226 | |
| (313) 223-3500 | |
| (313) 223-3598 Fax | |

J. Timothy Mast
TROUTMAN SANDERS LLP
**Attorney for Thomas Lasorda**
600 Peachtree Street, NE Suite 5200
Atlanta, GA 30308-2216
(404) 885-3312

Wilbur H. Boies
Nancy G. Ross
MCDERMOTT WILL & EMERY LLP
**Attorneys for State Street Bank & Trust, Co.**
227 W. Monroe Street
Chicago, IL 60606
(312) 984-7686

Abraham Singer (P23601)
James D. VandeWyngearde (P58634)
PEPPER HAMILTON LLP
**Attorneys for State Street Bank & Trust, Co.**
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110

# BRIEF IN SUPPORT OF PLAINTIFFS'
## MOTION FOR LEAVE TO AMEND COMPLAINT

# TABLE OF CONTENTS

**Page**

INDEX OF AUTHORITIES...................................................................................ii

STATEMENT OF ISSUE PRESENTED.............................................................iii

STATEMENT OF MOST CONTROLLING AUTHORITY.........................................iv

PRELIMINARY STATEMENT..............................................................................1

ARGUMENT.......................................................................................................1

I.      PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THEIR
        PROPOSED FIRST AMENDED COMPLAINT......................................1

        A.      *Allowing Plaintiffs to File their Proposed First Amended
                Complaint Will Not Result in Any Undue Prejudice to Defendants*.........2

        B.      *Plaintiffs' Proposed First Amended Complaint is Not Futile as it
                Asserts Viable Causes of Action against Defendants*.......................3

                1.      State Street's Liability under the Rabbi Trust.......................7

                2.      Daimler's Liability under the Rabbi Trust.............................8

                3.      LaSorda and the Other Fiduciaries' Liability under the
                        Rabbi Trust...................................................................11

CONCLUSION..................................................................................................12

CERTIFICATE OF SERVICE...........................................................................13

i

## INDEX OF AUTHORITIES

**Page(s)**

**Cases:**

*Cigna v. Amara,*
    131 S.Ct. 1866 (2011)……………………………………………………3

*Cyr v. Reliance Std. Life Ins. Co.,*
    642 F.3d 1202 (9th Cir. 2011)………………………………………………9

*Daniel v. Eaton Corp.,*
    839 F.2d 263 (6th Cir. 1988)………………………………………………9

*Foman v. Davis,*
    371 U.S. 178 (1962)……………………………………………………2

*Gomez-Gonzalez v. Rural Opportunities, Inc.,*
    626 F.3d 654 (1st Cir. 2010)………………………………………………10

*Gore v. El Paso Energy Corp. Long Term Disability Plan,*
    477 F.3d 833 (6th Cir. 2007)………………………………………………9

*Harris Trust v. Salomon Smith Barney,*
    530 U.S. 238 (2000)……………………………………………………9

*Janikowski v. Bendix Corp.,*
    823 F.2d 945 (6th Cir. 1987)………………………………………………2

*LifeCare Mgmt. Servs. LLC v. Ins. Mgmt. Adm'rs,*
    2013 U.S. App. LEXIS 239 (5th Cir. Tex. Jan. 4, 2013)…………………………9

*Neely v. Miller Brewing Co.,*
    *No. 98-356,* 1999 U.S. Dist. LEXIS 23291 (S.D. Ohio)……………………………2

*Tefft. v. Seward,*
    689 F.2d 637 (6th Cir. 1982)………………………………………………2

**Statutes and Court Rules:**

Fed. R. Civ. P. 15……………………………………………………………1

29 U.S.C. § 1132……………………………………………………………3, 9

## <u>STATEMENT OF ISSUE PRESENTED</u>

I.  WHETHER PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THEIR
PROPOSED FIRST AMENDED COMPLAINT (ATTACHED HERETO AS **EXHIBIT
1**), WHERE LEAVE TO AMEND UNDER RULE 15(a)(2) "SHALL BE FREELY
GIVEN AS JUSTICE SO REQUIRES."

## STATEMENT OF MOST CONTROLLING AUTHORITY

1.   Fed. R. Civ. P. 15(a)(2);

2.   *Janikowski v. Bendix Corp.,* 823 F.2d 945 (6th Cir. 1987); and

3.   *Foman v. Davis,* 371 U.S. 178 (1962).

iv

## **PRELIMINARY STATEMENT**

Plaintiffs, John Loffredo, et al (collectively "Plaintiffs"), have initiated the instant lawsuit against Defendants, Daimler AG ("Daimler"), State Street Bank and Trust Company ("State Street"), Thomas LaSorda's ("LaSorda"), John Doe and Mary Roe[1] (sometimes collectively referred to as "Defendants"), seeking to recover damages resulting from Defendants' conduct in the management of Chrysler's Supplemental Executive Retirement Plan (the "SRP") and management and disbursement of funds held in a Rabbi Trust which had been established for the benefit of Plaintiffs.

Plaintiffs seek leave to file a proposed First Amended Complaint ("FAC") for three reasons: (1) to incorporate claims against Defendants, Daimler AG ("Daimler"), State Street Bank and Trust Company ("State Street") and Thomas LaSorda's ("LaSorda") (sometimes collectively referred to as "Defendants"), based upon Defendants' failure to comply with the terms of the Rabbi Trust agreement which governs Defendants' conduct regarding the management and disbursement of funds held in the Rabbi Trust; (2) to add a number of additional individuals (who are similarly situated to the existing Plaintiffs) as additional Plaintiffs in this lawsuit; and (3) in order to correct the spelling of the names of some of the existing Plaintiffs.

## **ARGUMENT**

### I.   **PLAINTIFFS SHOULD BE GRANTED LEAVE TO FILE THEIR PROPOSED FIRST AMENDED COMPLAINT.**

Rule 15(a)(2) provides that a party may amend a pleading by leave of the Court, and that *leave shall be "freely" given "when justice so requires."* Fed. R. Civ. P. 15(a)(2) (emphasis added).   Sixth Circuit jurisprudence "manifests liberality in allowing amendments to a

---

[1] John Doe and Mary Roe are hereinafter referred to as the "Other Fiduciaries."

complaint." *Janikowski v. Bendix Corp.,* 823 F.2d 945, 951 (6th Cir. 1987) (internal quotation marks omitted).  The United States Supreme Court has explained that:

> If the underlying facts or circumstances relied upon by a plaintiff may be a proper subject of relief, he ought to be afforded an opportunity to test his claim on the merits.  In the absence of any apparent or declared reason -- such as undue delay, bad faith or dilatory motive on the part of the movant, repeated failure to cure deficiencies by amendments previously allowed, undue prejudice to the opposing party by virtue of allowance of the amendment, futility of amendment, etc. -- the leave sought should, as the rules require, be "freely given."

*Foman v. Davis,* 371 U.S. 178, 182 (1962).  Here, there are no grounds upon which to deny Plaintiffs leave to amend, and as such the instant Motion should be granted.

In *Janikowski,* the Sixth Circuit Court of Appeals reversed the district court's order denying the plaintiff leave to amend finding that such denial constituted an abuse of discretion. 823 F.2d at 952.  There, the plaintiff's motion for leave was filed after the close of discovery, after the defendant had filed a dispositive motion, and on the dispositive motion deadline, yet the Sixth Circuit still found an abuse of discretion. *Id.* at 951.  Here, the circumstances weighing in favor of granting Plaintiffs leave are substantially more compelling than those in *Janikowski* where the parties have not even begun to conduct discovery.

**A.**  ***Allowing Plaintiffs to File their Proposed First Amended Complaint Will Not Result in Any Undue Prejudice to Defendants.***

Courts routinely find that a defendant is not prejudiced by amendment of the pleadings prior to discovery, and the factual basis underlying the claims which the plaintiff sought to add are substantially the same as those already plead. See, *Tefft. v. Seward,* 689 F.2d 637 (6th Cir. 1982); and *Neely v. Miller Brewing Co., No. 98-356,* 1999 U.S. Dist. LEXIS 23291 (S.D. Ohio). Here, discovery has not begun, Defendants have not filed answers to Plaintiffs' original Complaint, and there is no scheduling order presently in place.  Additionally, the general factual

scope of Plaintiffs' claims has not changed. The factual basis supporting the claims asserted by Plaintiffs in their original Complaint is Defendants' decision to provide lump sum payments, annuities and/or transfers of SRP benefits from the Rabbit Trust to a qualified retirement plan for only active employees, who as a group, were younger than Plaintiffs. **Docket No. 31-1 (Original Complaint) at ¶¶ 32-36.** These measures served to protect the younger active employees from losing their SRP benefits in the event of bankruptcy. *Id.* Likewise, the additional claims asserted by Plaintiffs in their proposed FAC are based upon the same general underlying facts— Defendants' course of conduct in acting to protect the SRP benefits of only actively employed SRP participants. **Exhibit 1 ("FAC") at ¶¶ 26-68.** Defendants' conduct not only illegally discriminated against Plaintiffs on the basis of age, but also violated Plaintiffs' rights under the Rabbi Trust agreement.

> **B.** *Plaintiffs' Proposed First Amended Complaint is Not Futile as it Asserts Viable Causes of Action against Defendants.*

Section 1132(a)(1)(B) of ERISA gives a participant of an employee benefits plan the right to bring a civil action *"to enforce his rights under the terms of the plan."* 29 U.S.C. § 1132(a)(1)(B) (emphasis added).

Similarly, Section 1132(a)(3)(B) of ERISA gives a participant of an employee benefits plan the right to bring a civil action "to obtain other appropriate equitable relief . . . *to enforce . . . the terms of the plan."* 29 U.S.C. § 1132(a)(3)(B) (emphasis added). In *Cigna v. Amara,* the United States Supreme Court recently made clear that claims by plan participants against plan fiduciaries, such as Defendants, seeking to recover monetary relief are permissible claims that "fall within the scope of the term 'appropriate equitable relief' in [29 U.S.C. § 1132(a)(3)]." 131 S.Ct. 1866, 1880 (2011).

3

The Rabbi Trust was established for the specific purpose of providing for the payment of benefits under the SRP:

> . . . the Trust shall be held and used only for one of the following purposes:  (1) to pay any benefits that become payable to participating employees . . . under the Plan;[2] (2) to reimburse the Employer . . . for payments made to participants . . . ; or (3) to pay the expenses, including Trustees' fees, incurred in the administration of this Trust . . . .

**Exhibit 2, Rabbi Trust, § 2.1, p. 5.**

Section 3.2 of the Rabbi Trust further confirms the strict limitations on the permissible uses of Rabbi Trust assets which are initially set forth in Section 2.1 of the Rabbi Trust, and provides that:

> ***It shall be impossible,*** at any time prior to the satisfaction of all liabilities with respect to the participants or beneficiaries under the Plan and to Insolvency Creditors, if any, for any part of the participants or beneficiaries under the Plan and to Insolvency Creditors, if any, ***for any part of the corpus or income of the Trust,*** other than such part as is required to pay taxes and administration expenses or to reimburse the Employer or any Participating Subsidiary for payments made under the Plan as herein provided, ***to be used for, or diverted to, purposes other than for the exclusive benefit of such participants*** or their beneficiaries, or such Insolvency Creditors.

**Rabbi Trust, § 3.2, p. 10 (emphasis added).**

The Rabbi Trust also imposes a variety of obligations upon Defendants which are relevant in this case, and are set forth below.

First, Section 2.1 of the Rabbi Trust imposes fiduciary duties upon any and all individuals or entities who are defines as a "Fiduciary" under the Rabbi Trust, and provides that:

> Each Fiduciary, in carrying out the responsibilities assigned to it under this Agreement, shall act . . . using the care, skill, prudence, and diligence under the circumstances then prevailing that a

---

[2] The Rabbi Trust defines the term "Plan" as the "Chrysler Corporation Supplemental Executive Retirement Plan . . . and any similar prior or successor plan," which referred to in this brief as the SRP. **Rabbi Trust, § 1.17, p. 4.**

4

> prudent man acting in a like capacity and familiar with such
> matters would use in the conduct of an enterprise of a like
> character and with like aims.

**Rabbi Trust, § 2.1, p. 5.**  The Rabbi Trust defines a "Fiduciary" as "the Board of Directors, the

Employee Benefits Committee, the Retirement Funds Review Committee, the Trustee, any

Investment Manager appointed pursuant to this Agreement, and any person to whom the

responsibilities of such persons . . . are delegated in accordance with Section 2.3[3] hereof." **Rabbi**

**Trust, § 1.8, p. 3.**

Second, Section 2.7 of the Rabbi Trust charges the Employee Benefits Committee (and/or

its delegate) with responsibility for "the promulgation of appropriate directions to implement

benefit payments from the Trust, provided that such determination is made in good faith." **Rabbi**

**Trust, § 2.7(b).**

Third, Section 2.9(a)(v) imposes duties upon State Street to: (1) ensure that the Employee

Benefits Committee provided good faith instructions regarding the distribution of Rabbi Trust

assets; and (2) determine the appropriate disbursements under the Plan, and make such

disbursements, in the event that the Employee Benefits Committee fails to provide timely

instructions.  Specifically, Section 2.9(a)(v) of the Rabbi Trust provides that:

> In the event that the Employee Benefits Committee fails to provide
> timely instructions or does not provide good faith instructions for
> the distribution of Benefits under the Plan, the Trustee is
> specifically authorized to disregard such instructions (or lack
> thereof) and, in its sole discretion, make an independent
> determination as to the proper distributions under the Plan . . . and
> make distributions in accordance with such independent
> determination.

**Rabbi Trust, § 2.9(a)(v), p. 8.**

---

[3] Section 2.3 of the Rabbi Trust generally allows individuals designated as fiduciaries under Section 2.2 of the Rabbi Trust to delegate their responsibilities under the Rabbi Trust to other individuals or entities. **Rabbi Trust, § 2.3, pp. 5-6.**

Fourth, the Rabbi Trust imposes an obligation upon the "Corporation" (Chrysler Corporation/Daimler Chrysler/Chrysler, LLC) to make contributions to the Rabbi Trust such that the Rabbi Trust has enough funds available to pay all plan participants' retirement benefits under the Plan in a lump sum upon the occurrence of events that constitute a change or potential change in control of the company.   Section 2.7(f) of the Rabbi Trust confers the Employee Benefits Committee (and/or its delegate) with general responsibility for the "acts permitted or required to be performed by the Corporation under this Agreement." **Rabbi Trust, § 2.7, p. 7.** As such, it was the responsibility of the Employee Benefits Committee, or its delegate, to ensure that the Corporation made the required contributions to the Rabbi Trust as required by the change or potential change in control provisions.

Section 3.1.1 of the Rabbi Trust provides that:

> Prior to, or within thirty (30) days immediately following, a Potential Change in Control[4] . . . , *the Corporation must deliver to the Trustee to be held in trust hereunder a contribution* (the "Required Funding Amount")) having a fair market value equal to (x) the "Commuted Value" (as defined in the Plan)[5] of the amount of Benefits due to the participants (and their beneficiaries) under the Plan, assuming . . . . the termination of the employment of the participants within the two-year period immediately following the Change in Control in such a manner as to produce the maximum Benefits with respect to each participant under the Plan, reduced by (y) the fair market value of the assets then held in trust hereunder.

---

[4] A "Potential Change in Control" is defined as any one of four specified events, including in relevant part, "[a]ny Person who is or becomes the Beneficial Owner, directly or indirectly, of securities of the Employer representing 10% or more of the combined voting power of the Employer's then outstanding securities, increases such Person's beneficial ownership of such securities by 5% or more over the percentage so owned by such Person on the date hereof." **Rabbi Trust, § 1.18, p. 3.** A "Change in Control" is defined as:  (1) an individual or entity becoming the owner of 20% or more of the outstanding shares of the company; (2) certain changes among the Board of Directors; (3) stockholder approval of a merger; or (4) stockholder approval of complete liquidation and/or sale of substantially all of the company's assets. **Rabbi Trust, § 1.4, p. 2.**

[5] The SRP defines "Commuted Value" as "an amount equal to the lump sum value at the date of determination of periodic payments payable thereafter discounted from the respective payment dates of such periodic payments to the date of determination at the rate of interest adopted by the Committee and set forth in Appendix A to this Plan." **Exhibit 3, SRP at § 2.11, p. 10.**

6

Rabbi Trust, § 3.1.1, p. 9.

Section 3.1.2 of the Rabbi Trust provides in relevant part:

> *Upon the occurrence of a Change in Control and at six-month*
> *intervals thereafter,* . . . . If the Required Funding Amount . . .
> exceeds the fair market value of the assets then held in trust
> hereunder, the Corporation shall promptly (and in no event later
> than thirty (30) days from the date of such six-month interval date)
> deliver to the Trustee a contribution equal to such excess.

Rabbi Trust, § 3.1.2, p. 10 (emphasis added).

There have been at least three events constituting a Change in Control or Potential
Change in Control, each of which triggered the funding requirements set forth in Sections 3.1.1
and 3.1.2 of the Rabbi Trust during the relevant time period. The first event occurred in 1998
when CC and DBAG merged to form DCAG. Stockholder approval of a merger constitutes a
Change in Control. The second event occurred in August 2007 when Daimler sold a majority
interest in Chrysler to Cerberus. The August 2007 transaction constituted a Change in Control as
defined by the Rabbi Trust inasmuch as Cerberus obtained more than a 20% interest in Chrysler
as a result of the transaction. The third event occurred in March or April 2009 when Daimler
and Cerberus signed a binding term sheet for the redemption of Daimler's remaining 19.9%
interest in Chrysler. The execution of a binding term sheet providing for the redemption of
Daimler's remaining 19.9% interest in Chrysler constituted a Potential Change in Control as
defined by the Rabbi Trust.

1.    State Street's Liability under the Rabbi Trust.

Plaintiffs' FAC alleges that State Street breached its duties owed to Plaintiffs under the
express terms of the Rabbi Trust in three distinct ways. First, the FAC alleges that the Employee
Benefits Committee provided bad faith instructions for the distribution of Rabbi Trust assets to
actively employed SRP participants only (to the exclusion of Plaintiffs) was not made in good

7

faith, and that State Street breached the Rabbi Trust by failing to disregard those instructions, which constitutes a violation of Sections 2.1 and 2.9(a)(v) of the Rabbi Trust. **FAC at ¶¶ 85-86.** Second, the FAC further alleges that State Street breached the Rabbi Trust by permitting the disbursement of Rabbi Trust assets for impermissible purposes, which constitutes a violation of Sections 2.1 and 3.2 of the Rabbi Trust. **FAC ¶ 87.** Third, the FAC further alleges that State Street breached the Rabbi Trust by failing to terminate the Rabbi Trust and distribute the assets of the Rabbi Trust to the SRP Participants upon the Corporations failure to fully fund the Rabbi Trust at six month intervals following the changes in control that occurred in 1998 and 2007, and/or the potential change in control in 2007, which constitutes a violation of Sections 2.1 and 2.9(a)(v) of the Rabbi Trust. **FAC ¶¶ 88-89.** Granting Plaintiffs leave to file the FAC is not futile where Plaintiffs' FAC asserts viable claims against State Street based upon the terms of the Rabbi Trust, and State Street's is subject to liability under the terms of the Rabbi Trust because it serves as the trustee in actual physical possession of the assets of the Rabbi Trust.

   **2.    Daimler's Liability under the Rabbi Trust.**

   As a threshold matter, it is important to note that Plaintiffs' FAC has alleged sufficient allegations to establish that Daimler is subject to liability under the terms of the Rabbi Trust even though Daimler is not expressly designated as a fiduciary thereunder. In particular, Plaintiffs have alleged that Daimler refused to allow the Employee Benefits Committee to exercise independent discretion regarding the management and administration of the SRP and Rabbi Trust, and that "Daimler required that all major actions of the Employee Benefits Committee be presented to, and approved by, DCC's Board of Directors and Daimler's board of management." **FAC at ¶ 35.** As such, Daimler is acted as a delegate of the Employee Benefits Committee, and is subject to the same duties of prudence, good faith, and responsibility for the implementation of

8

actions required to be taken by the Corporation under the terms of the Rabbi Trust pursuant to

Sections 2.1 and 2.7 of the Rabbi Trust.  Additionally, the relevant portions of ERISA's civil

enforcement provision do not limit the parties who are subject to liability thereunder.  Section

502(a)(1)(B) expressly allows claims only to be brought by "a participant or beneficiary," but in

no way limits the potential scope of individuals or entities who may be liable thereunder.

Likewise, Section 502(a)(3) expressly allows claims only to be brought by "a participant,

beneficiary, or fiduciary," but in no way limits the potential scope of individuals or entities who

may be liable thereunder.  A party that controls administration of a plan is subject to liability

under ERISA's civil enforcement provision. See, *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th

Cir. 1988) (holding that an employer that is not expressly designated as a plan administrator is a

proper defendant in an action for benefits under ERISA where it is "shown to control

administration of a plan"); *Gore v. El Paso Energy Corp. Long Term Disability Plan,* 477 F.3d

833, 842 (6th Cir. 2007) (finding that an employer was not liable because it did not exercise

discretionary control over plan administration); *Harris Trust v. Salomon Smith Barney*, 530 U.S.

238 (2000) (Section 502(a)(3) of ERISA "admits of no limit . . . , on the universe of possible

defendants."); *Cyr v. Reliance Std. Life Ins. Co.,* 642 F.3d 1202, 1205 (9th Cir. 2011) ("By its

terms, § [502](a)(1)(B) does not appear to limit which parties may be proper defendants  in that

civil action. Nor has the Secretary of Labor promulgated a regulation setting out such limits. . . .

There are no limits stated anywhere in § [502(a)] about who can be sued."); and *LifeCare Mgmt.*

*Servs. LLC v. Ins. Mgmt. Adm'rs,* 2013 U.S. App. LEXIS 239, 20-21 (5th Cir. Tex. Jan. 4, 2013)

("We agree that '[t]he proper party defendant in an action concerning ERISA benefits is the

party that controls administration of the plan' and that '[i]f an entity or person other than the

named plan administrator takes on the responsibilities of the administrator, that entity may also

9

be liable for benefits.'"), citing *Gomez-Gonzalez v. Rural Opportunities, Inc.,* 626 F.3d 654, 665 (1st Cir. 2010).

Plaintiffs' FAC alleges that Daimler breached its duties owed to Plaintiffs under the express terms of the Rabbi Trust in four distinct ways. First, the FAC alleges that Daimler breached the Rabbi Trust by approving the distribution of Rabbi Trust assets to actively employed SRP participants only (to the exclusion of Plaintiffs), which decision was not made in good faith. **FAC at ¶¶ 93.** Second, the FAC further alleges that Daimler breached the Rabbi Trust by approving the disbursement of Rabbi Trust assets for impermissible purposes, which constitutes a violation of Sections 2.1 and 3.2 of the Rabbi Trust. **FAC at ¶ 94.** Indeed, prior to Chrysler's bankruptcy, approximately $200 million disappeared from the Rabbi Trust, and was not used to pay Plaintiffs' SRP retirement benefits, and therefore must have been used for purposes not permitted by the terms of the Rabbi Trust. **FAC at ¶¶ 49-51.** Third, the FAC further alleges that Daimler breached the Rabbi Trust by exercising control over the Corporation's decision not to fully fund the Rabbi Trust at six month intervals following the changes in control that occurred in 1998 and 2007, and/or the potential change in control in 2007, which constitutes a violation of Sections 3.1.1 and 3.1.2 of the Rabbi Trust. **FAC at ¶ 95.** Fourth, Daimler breached the terms of the Rabbi Trust by failing to act in accordance with the express intent of the Rabbi Trust, and failing to use "the care, skill, prudence, and diligence under the circumstances" of a "prudent man" by failing to securitize all of the SRP participants' retirement benefits. **FAC at ¶¶ 96-98.** Granting Plaintiffs leave to file the FAC is not futile where Plaintiffs' FAC asserts viable claims against Daimler based upon the terms of the Rabbi Trust, and Daimler is subject to liability under the terms of the Rabbi Trust arising from

Daimler's actual exercise of discretionary authority over the administration and management of the Rabbi Trust.

### 3.   LaSorda and the Other Fiduciaries' Liability under the Rabbi Trust.

Plaintiffs' FAC alleges that LaSorda and the Other Fiduciaries breached their duties owed to Plaintiffs under the express terms of the Rabbi Trust in four distinct ways.  First, the FAC alleges that LaSorda and the Other Fiduciaries breached the terms of the Rabbi Trust by failing to act in accordance with the express intent of the Rabbi Trust, and failing to use "the care, skill, prudence, and diligence under the circumstances" of a "prudent man" by failing to securitize all of the SRP participants' retirement benefits. **FAC at ¶¶ 101-102.**  Second, the FAC alleges that LaSorda and the Other Fiduciaries breached the Rabbi Trust by recommending and/or approving the distribution of Rabbi Trust assets to actively employed SRP participants only (to the exclusion of Plaintiffs), which decision was not made in good faith. **FAC at ¶¶ 103.**  Third, LaSorda and the Other Fiduciaries breached the Rabbi Trust by approving the disbursement of Rabbi Trust assets for impermissible purposes, which constitutes a violation of Sections 2.1 and 3.2 of the Rabbi Trust. **FAC at ¶ 104.**  Fourth, LaSorda and the Other Fiduciaries also breached the Rabbi Trust by exercising control over the Corporation's decision not to fully fund the Rabbi Trust at six month intervals following the changes in control that occurred in 1998 and 2007, and/or the potential change in control in 2007, which constitutes a violation of Sections 3.1.1 and 3.1.2 of the Rabbi Trust. **FAC at ¶ 105.**  Granting Plaintiffs leave to file the FAC is not futile where Plaintiffs' FAC asserts viable claims against LaSorda and the Other Fiduciaries based upon the terms of the Rabbi Trust, and LaSorda and the Other Fiduciaries are subject to liability under the terms of the Rabbi Trust because they are expressly named as fiduciaries and actually exercised discretionary authority over the administration and management of the Rabbi Trust.

11

## **CONCLUSION**

For all of the foregoing reasons, Plaintiffs respectfully request that this Court GRANT the instant Motion, and enter an order granting Plaintiffs leave to file their Second Amended Complaint in the form attached hereto as **Exhibit 1.**

<div style="margin-left: 40%">

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/Mayer Morganroth
MAYER MORGANROTH (P17966)
JEFFREY M. THOMSON (P72202)
Counsel for Appellants
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: mmorganroth@morganrothlaw.com

LAW OFFICES OF SHELDON MILLER
SHELDON L. MILLER (P17785)
Counsel for Appellants
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
(248) 538-3400

</div>

Dated:  February 22, 2013

12

## CERTIFICATE OF SERVICE

I hereby certify that on February 22, 2013, I have filed the foregoing Plaintiffs' Motion for Leave to Amend Complaint electronically with the Clerk of the Court using the ECF system which will send electronic notification of such filing to all counsel of record.

MORGANROTH & MORGANROTH, PLLC

By: /s/ Jeffrey M. Thomson
JEFFREY M. THOMSON (P72202)
Counsel for Appellants
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: mmorganroth@morganrothlaw.com

13