# Exhibit A

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF MICHIGAN

JOHN LOFFREDO, CHARLES ACKER, ALLEN D. ADAM, TIMOTHY ADAMS,
PAUL C. AGNEW, ANDREW A. AGOSTA, GIRDHARI L. AGRAWAL,
RICHARD L. ALBRECHT, STEPHEN A. ALCOCK, GORDON E. ALLARDYCE,
FLOYD E. ALLEN, SEBASTIAN ARMBRUSTER, THOMAS E. ATKINS,
ROBERT J. ATWELL, JR., STEPHEN L. AZONI, KALYAN BAGGA,
LAURENCE W. BAKER, DENNIS A. BARILE, CLARISSA JANE BARLOW,
THEODORE K. BARNHART, ERNEST J. BARRY, DAVID J. BARTLO,
FREDERIK J. BARTZ, ARA E. BASHERIAN, WALTER J. BATTLE, JR.,
DAVID W. BECKNER, BERNARD BEDARD, GERALD D. BERGMOSER,
PAUL I. BERRIGAN, GERALD L. BEVERMAN, JOHN C. BIRD, WILLIAM S. BISHOP,
LOUIS M. BITONTI, GREGORY A. BLINDU, LAWRENCE C. BOCZAR,
BENJAMIN BOGGS, THOMAS A. BOLTIK, RONALD R. BOLTZ, DAVID BONSKY,
LARRY BOOR, DAVID P. BOSTWICK, SANDRA BOUCKLEY, WILSON E. BOUGHTON,
WILLIAM BOYD, MARK BRACKON, JAMES J. BOZYK, BILLY A. BRICKLES,
KEVIN P. BRODERICK, NELSON BROOKS, JR., TREVOR BROWN,
THOMAS C. BROWN, RICHARD F. BROWN, RICHARD E. BROWN, ROGER M. BRUCE,
EDWIN H. BRUST, MILES G. BRYANT III, DENNIS E. BRYLL, KENNETH M. BUCZEK,
J. MICHAEL BURKE, DAVID W. BUSACCA, CHARLES N. BUSCH,
WYNN V. BUSSMANN, MICHAEL L. BUSTAMANTE, CHARLES BUTTS,
SUSAN M. BUXTON, EDWARD J. BYRNE, JR., JOSEPH CADDELL,
JOHN A. CANGIALOSI, THOMAS P. CAPO, JOSEPH E. CAPPY, DAVID L. CARLSON,
JAMES CARLSON, TIMOTHY A. CASERTA, GARY W. CASH, RICHARD S. CASSLE,
FRANCOIS CASTAING, FRANK A. CECI, STEPHEN M. CEROVSKY,
JEFF CHIAPPETTA, JOHN W. CHISOLM, MICHAEL P. CICCONE,
GERALD CILIBRAISE, ALBERT MICHAEL CLEMENT, DEWANE C. COGSWELL,
MICHAEL W. COLE, ABRAHAM CONTINO, RONALD J. CORIROSSI,
CHARLOTT L. CORNELL, PAUL CRAIG CORRINGTON,
EDMUND MICHAEL COUGHLIN, GUY COWING, ROBERT E. COX,
RICHARD M. COZART, JOHN E. CRAIN, AMERICUS L. CRAWFORD,
JAMES L. CRAWFORD, GARY R. CRISP, GENE R. CROMBEZ,
MICHAEL PAUL CRONIN, THEODOR R. CUNNINGHAM, JAMES MICHAEL CURRIN,
JAMES H. CYPHER, RON CZAR, CLIFFORD J. DAVIS, DENISON S. DAVIS,
DARRELL L. DAVIS, THOMAS E. DAVIS, ROBERT L. DAVIS, JOHN R. DAWSON, JR.,
BRENDA DAY, HENRY B. DECALUWE, FRANK N. DEMAIO, DENNIS DEMERS,
MARY ANN DEMSKI, KENNETH E. DEMSKI, TRENT DEVERNA,
MICHAEL G. DEYOUB, PIERO DIMAMBRO, GARY R. DIMITRY,
BRUCE DONALDSON, JAMES D. DONLON, III, PATRICK J. DONNELLY,
WILLIAM P. DONOHUE, RONALD R. DOWELL, JOSEPH M. DUPREE,
TIMOTHY DYKSTRA, RICHARD E. EARLE, CLYDE ELBA, RICHARD S. ENTENMANN,
JOHN A. ERNSTER, CHARLES H. ESCHENBACH, WILLIAM M. ESSER,
RICHARD EVERETT, JOHN S. FELICE, EDWIN J. FILBIN, DAVID R. FISCHER,
JANE E. FITZGIBBON, DENNIS FITZPATRICK, RONALD A. FLOR,

DENNIS E. FLORENCE, JOHN F. FLOYD, JAMES M. FLUTUR, ROBERT J. FORBES,
JAMES A. FOREMAN, JIM L. FOSTER, KENNETH R. FRANCESE, REX FRANSON,
PHYLLIS FRIES, FRANK T. FREDERICK, ROBERT G. FULLER, THOMAS C. GALE,
THOMAS GALLAGHER, KEVIN R. GALVIN, RONALD J. GARDHOUSE,
VINCENT GARRISI, MICHAEL GARSTECKI, STEPHEN GARTH,
GREGORY T. GAUDETTE, PHILLIP E. GAVIE, RICHARD O. GEISS,
MICHAEL J. GIALDINI, THOMAS GIANNINI, FRANK J. GLASGOW,
DONALD L. GLENN, JOHN GLOTZBACH, MICHAEL H. GOEDDEKE, RUEVEN GOLAN,
LEWIS GOLDFARB, HENRY S. GOLDMAN, GARY GOLOMB, MICHAEL S. GONDA,
CLINTON J. GRAHAM, JOSEPH A. GRAMLING, STEVE GRAVES, JERRY W. GREELEY,
ROGER E. GUETZKOW, THOMAS F. GUIDUGLI, RONALD GURDAK,
RICHARD T. GUTOWSKI, JAMES A. HAAS, RANDOLPH N. HAIKO,
THOMAS C. HAMILTON, CHARLES B. HAMILTON, LESLIE M. HAMILTON,
WILLIAM L. HAMMERS, NORMAN HAMWAY, ROBERT F. HANBA,
EDWARD R. HANISH, JOSEPH S. HANNAN, JR., FREDERIC W. HANNERT,
DANIEL P. HARDIN, JR., KEITH A. HARRISON, JAMES E. HASELWOOD,
GARY HAVENS, JAMES A. HAZZARD, GREGORY DEAN HEARD,
WILLIAM L. HEATHCOTE, NORRIS RAY HEDDING, PAUL B. HELLENS,
GARY L. HENSON, DONALD R. HERMAN, JAMES JAY HICKEY, GEORGE A. HIGGS,
JEFFREY HIGGS, THOMAS HILDEBRANDT, JOSEPH E. HILGER, JOHN P. HINCKLEY,
LAWRENCE D. HOENIG, JAMES PATRICK HOLDEN, DANIEL M. HOLLAND,
JAMES L. HOLLINGER, JAMES E. HOLTSLAG, ROBERT W. HORNICK,
RICHARD J. HOROKY, THOMAS E. HOSKEN, WAYNE HOSTYNSKI, GLEN HOUSE,
ANTHONY W. HOWETT, JOSEPH HUBER, MARK HUBER, ROBERT F. HURLIMAN,
WILLIAM STANLEY HURST, DAVID E. HYRE, FRED HUBACKER, LIDO A. IACOCCA,
MYKLE C. JACOBS, HARRY K. JAGTIANI, JAMIE JAMESON, PAUL V. JOBST,
RICHARD C. JOHNSON, KEITH A. JOHNSON, SR., GEORGE P. JOHNSON, JR.,
TRACY JOHNSON, TOM JOHNSTON, GITTA JUDD, MICHAEL KANE,
JOHN H. KAISER, PRANCISKUS S. KAUNELIS, DENNIS KELLY, DAVID W. KEMPKEN,
PHIL KENNINGHAM, JOHN KENT, MICHAEL KERBY, WAYNE A. KIEB,
DAVID M. KIMBALL, WILLIAM R. KISSEL, CHARLES B. KITZ, WAYNE KLEMENT,
WILLIAM KLINGLER, DALE L. KOCH, MICHAEL J. KOLKJEN, ZIEVA KONVISSER,
LAWRENCE KOWAL, GERALD H. KOWALSKI, EDWARD KRAJA,
KENNETH J. KRUPANSKY, RONALD P. KRUPITZER, TERRY KRUTZ,
ANDREW C. KUCHARSKI, JOHN KUHNIE, ERNEST J. LAGINESS, JR.,
ALAN LAMBERT, WILLIAM LAMOTT, SANDRA S. LAPADOT, LOREN N. LAU,
ROBERT M. LAUDICINA, KENNETH J. LAURENCE, RONALD LAUX, PING LEE,
EDWARD LESNIAK, HARRY LEWIS, WILLIAM H. LEWIS, MARTIN R. LEVINE,
GREG LEWANDOWSKI, TIMOTHY T. LIBBY, ARTHUR LIEBLER, LOUISE R. LINDER,
TED B. LINDSTROM, MERLE E. LISKEY, JOHN LIU, CARLOS LOBO SILVA,
JAMES E. LODGE, ROBERT P. LONGSTRETH, HERBERT S. LUGGER, FRED V. LUSS,
MICHAEL LUTSCH, ROBERT A. LUTZ, JAMES J. LYIJYNEN, DAVID LYIJYNEN,
SUSAN M. LYNDEN, M. JOHN MACDONALD, DONALD C. MACDONALD,
KENNETH S. MACK, TIMOTHY J. MADDEN, ALISA L. MAHER, WALTER G. MAHER,
EUGENE MAHON, RONALD A. MAJESKE, JEAN P. MALLEBAY-VACQUEUR, JERRY
V. MALLORY, GARY MARCHENIA, EUGENE J. MARCINAK, THOMAS L. MARTIN,

VIRGIL THOMAS MATCZAK, OMAR MATT, RICHARD J. MATTON, JAMES MAY,
JAMES MCLALLAN, THOMAS CRAIG MCALEAR, WILLIAM D. MCALLISTER,
ALEX J. MCCLOSKEY, IV, JOE W. MCCORMICK, DAN MCDAVID,
PRUDENCE A. MCINTOSH, KENNETH L. MCLAIN, LINDA J. MCLALIN,
ERNEST O. MCLAUGHLIN, BARTON J. MCLELLAN, DANIEL F. MCRAE,
DIANA MERCER-PRYOR, SALVATORE A. MESSINA, DAVID M. MILLER,
FRANCIS L. MILLER, JEROME MILLER, JOHN C. MILLER, GEORGE B. MILUSH, JR.,
DONALD MILTZ, RICHARD MIZON, GEORGE E. MOCK, JR., JOSEPH S. MOLLAHAN,
ROGER D. MONFORTON, JR., DENNIS P. MONTONE, KENNETH R. MOORE,
WILLIAM E. MOORE, TERENCE J. MOORE, THOMAS S. MOORE,
MICHAEL K. MORRISON, WILLIAM MORSTADT, ROBERT MOSER,
JAMES R. MURRAY, RICHARD NAJ, THOMAS L. NALLY, ROBERT A. NEAL,
DAVID A. NELSON, RICHARD G. NEPTUNE, JACK R. NICHOLS, JAMES W. NIHLS,
WARREN S. NORRID, JR., MICHAEL A. NYKIEL, ANDY OKAB, MARK OKLA,
GARY OLSON, MICHAEL M. O'MARA, NILS OMHOLT, JAMES ORI,
THOMAS P. O'ROURKE, GEORGE OSWALD, KATHLEEN M. OSWALD,
WAYNE OUELLETTE, HOWARD B. PADGHAM, HAROLD T. PAGE, ROBERT A. PAGE,
JAMES J. PALMER, LOUIS B. PANYARD, E.T. PAPPERT, JOE W. PARK,
DENNIS. K. PAWLEY, ANTHONY J. PECORARO, GEORGE P. PELLETIER,
DONALD E. PENTECOST, JAMES PERAINO, JAMES A. PETER,
ROLAND PETERSDORF, RICHARD PETERSON, MICHAEL D. PHILLIPS,
GERALD T. PIASKOWSKI, LINO J. PIEDRA, RONALD J. POMAVILLE,
CLARE B. POREMSKY, FREDERICK J. PRICE, BARBARA L. PUTNAM,
KENNETH L. QUINT, FRANK P. RAMACCIATO, WALTER D. RAMSEY,
LAWRENCE I. RANKA, JON RASBACH, RICHARD RAY, DENNIS N. RENNEKER,
SALLIE LOU RHOADS, ANTHONY P. RICHARDS, JAMES W. RICKERT,
GORDON L. RINSCHLER, BERNARD ROBERTSON, JAMES BAILEY ROBERTSON,
DAVID A. ROBISON, PETER T. ROCK, ELAINE M. ROGUZ, FRED ROLLINS,
DENIS R. ROOT, BENJAMIN J ROUSH, ROBERT F. ROUSH, DEBRA ROWE, RICHARD
J. RUDY, ROGER D. RUGGIERO, JON L. RUNDELS, JOHN D. RUSSELL, JAMES
RUZZIN, LAWRENCE E. RYBACKI, GARY A. SALACH, VINCENT P. SAMMUT, FRANK
I. SANDERS, THOMAS V. SANTORO, JR., RALPH A. SAROTTE,
JAMES L. SAUTER, RONALD A. SAVAGE, JOSEPH M. SCALLISI,
SHERWOOD A. SCHARTNER, RICHARD O. SCHAUM,
JAMES CRAIG SCHOENFELDER, WALTER TOM SCHRIFT, RICHARD SCHROCK,
THOMAS L. SCHUSTER, WILLIAM SCHWANKI, DAREL L. SEAT,
CHARLES K. SESTOK III, ANTHONY S. SGARLATA, JOSEPH SHADY,
LAWRENCE WILLIAM SHARER, ROGER C. SHULZE, MARTIN R. SIEGAL,
CHESTER D. SKAZYPEK, THOMAS C. SLANEC, DAVID SLATES,
FRANK L. SLAUGHTER, JR., ALBERT J. SLECHTER, RAYMONE SLYWKA,
CLIFFORD A. SMITH, RALPH SMITH, ROY THEOTIS SMITH, ROBERT W. SMITH,
RONALD B. SMITH, NANCY J. SMITH, PATRICK R. SMORRA, PAUL G. SMUTS,
D WAYNE SNYDER, JAMES A. SORENSEN, HENRY G. SPELLMAN, ALAN SPENSER,
DAVID SPERDUTI, SUSAN STALLARD, THOMAS T. STALLKAMP,
DAVID B. STANDEN, JACK M. STANLEY, JOHN STONE, MARVIN F. STRACH,

JAMES W. STRAUSAUH, ALBERT C. STRICKLAND, JR., THOMAS C. STURGEON,
RICHARD J. SULLIVAN, STANLEY C. SURRATT, BERNARD EDMUND SWANSON,
STEVEN L. TAFLINGER, JAMES E. TATGE, RICHARD C. TAYLOR,
KENNETH W. TEAGUE, GEORGE H. TELFER, DAVID THOMAS,
JACK EDWIN THOMPSON, JAMES M. TOGER, KENNETH P. TOMASZEWSKI,
CHRISTINE TOMLIN, LONNY TOMLIN, WILLIAM TRACY, THOMAS TREMONT,
PAUL JEFFREY TRIMMER, ANTHONY J. TROVATO, LEO TUSSING,
JAMES J. TYLER, JR., JAMES H. UNTIEDT, RICHARD P. URBAN,
RONALD J. USTRUCK, PASQUALE VANNUCCI, RICHARD A. VARCONDA,
EARL J. VOGEL, EUGENE F. VOLLMER, GERALD S. VOTTA, JAMES C. WAGNER,
KENNETH NEIL WALLING, HUGH WALLING, DWIGHT R. WASHINGTON,
DAVID A. WATT, SR., GERALD A. WAYMAN, BRUCE WEBSTER, JOHN P. WEHRLY,
MICHAEL D. WHITE, ROBERT C. WHITE, MICHAEL C. WHITNEY, PAUL WILBUR,
DAVID WILD, GEORGE S. WILKINS, ARCHIE WILLIAMS,
LARRY EUGENE WILLIAMS, ROBERT M. WILLIAMS, W.R. WILLIAMS III,
THOMAS C. WILLOUGHBY, DARRELL CRAIG WINN, RICHARD A. WINTER,
JON J. WIOSKOWSKI, JAMES WISE, GERALD WIST, WILLIAM M. WITT,
LESTER H. WOLF, JAMES WOLF, JEFF WOLOSHEN, THOMAS E. WOODERSON,
MOID L. WOODWARD, JEFFREY C. WRIGHT, DENNIS ZEIGER, COLLEEN ZEMATIS,
WILLIAM C. ZEPP, JR., DAVID R. ZIMMER, EDWIN C. ZIMMERMANN, individually and
as representatives of a class of similarly situated persons,

        Plaintiffs,

v                                           Case No. 2:10-cv-14181-JAC-VMM
                                          Hon. Julian A. Cook
                                          Magistrate Judge Virginia M. Morgan

STATE STREET BANK AND TRUST
COMPANY, a Massachusetts Trust Company,
DAIMLER AG, a foreign corporation,
THOMAS LASORDA, an individual,
JOHN DOE and MARY ROE, individuals,

        Defendants.

                                                                  /

Sheldon L. Miller (P17785)
LAW OFFICES OF SHELDON MILLER
**Attorneys for Plaintiffs**
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
(248) 538-3400
(248) 538-5280 Fax

Mayer Morganroth (P17966) Jeffrey B.
Morganroth (P41670) MORGANROTH &
MORGANROTH, PLLC **Co-Counsel for
Plaintiffs**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000
(248) 864-4001 Fax

Lawrence G. Campbell (P11553)
Thomas G. McNeill (P36895)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
**Attorneys for Daimler AG, Dieter Zetsche and Thomas Lasorda**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
(313) 223-3598 Fax

Alan S. Goudiss
Jaculin Aaron
SHEARMAN & STERLING LLP
**Attorneys for Daimler AG and Dieter Zetsche**
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

J. Timothy Mast
TROUTMAN SANDERS LLP
**Attorney for Thomas Lasorda**
600 Peachtree Street, NE Suite 5200
Atlanta, GA 30308-2216
(404) 885-3312

Wilbur H. Boies
Nancy G. Ross
MCDERMOTT WILL & EMERY LLP
**Attorneys for State Street Bank & Trust, Co.**
227 W. Monroe Street
Chicago, IL 60606
(312) 984-7686

Abraham Singer (P23601)
James D. VandeWyngearde (P58634)
PEPPER HAMILTON LLP
**Attorneys for State Street Bank & Trust, Co.**
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110

/

# FIRST AMENDED COMPLAINT

NOW COME the above-named Plaintiffs, by and through their attorneys, the Law Offices of Sheldon L. Miller and Morganroth & Morganroth, PLLC, and for their First Amended Complaint state as follows:

## PARTIES, JURISDICTION AND VENUE

1.     Many of Plaintiffs are residents of various cities of the State of Michigan and various counties, including cities and counties within this judicial district.

2.      Defendant, Daimler AG ("Daimler"), is a stock corporation organized under the laws of the Federal Republic of Germany, which is conducting business in the State of Michigan, and within this judicial district.

3.      Defendant, State Street Bank and Trust Company ("State Street"), is a Massachusetts Trust Company, which transacts business in the State of Michigan, and within this judicial district.

4.      Defendant, Thomas Lasorda, is a resident of Michigan, and acted as a director and officer of DaimlerChrysler Corporation, which had its principal place of business in the State of Michigan within this judicial district.

5.      Defendants, John Doe and Mary Roe, were directors, manager, trustees or other officers of DaimlerChrysler Corporation and Chrysler LLC, which had their principal places of business in the State of Michigan within this judicial district.

6.      Subject matter jurisdiction is proper in this Court pursuant to 29 U.S.C. § 1132(e)(1) and 28 U.S.C. § 1331.

7.      Venue is proper in this court pursuant to 29 U.S.C. § 1132(e)(2) and 28 U.S.C. 1391(b)(2) because a substantial part of the events and omissions giving rise to the claim occurred within this judicial district.

8.      Plaintiffs bring this action on behalf of themselves and all other similarly situated participants of the Chrysler Supplemental Executive Retirement Plan consolidated as of October 1, 1996 ("SRP") pursuant to Rule 23 of the Federal Rules of Civil Procedure.

9.      Upon information and belief, there are numerous members of the proposed class, making joinder of all members impracticable.

10.     There are common questions of law and fact affecting the rights of the members of the proposed class.

11. Plaintiffs' claims are typical of the claims of the other members of the class, and Plaintiffs will fairly and adequately represent the interests of the class.

12. This action is properly maintainable as a class action pursuant to Rule 23(b)(1) because prosecuting separate actions by individual class members would create a risk of inconsistent adjudications and/or such individual adjudications would be dispositive of the interests of the other members of the proposed class not parties to the individual adjudications.

13. This action is properly maintainable as a class action pursuant to Rule 23(b)(2) because Defendants have acted on grounds that apply generally to the entire proposed class thereby making declaratory relief as to the rights of the proposed class as a whole appropriate under the circumstances.

14. This action is properly maintainable as a class action pursuant to Rule 23(b)(3) because there are questions of fact and law common to all members of the proposed class which predominate over any questions unique to individual members of the proposed class, and a class action is superior to other methods of adjudication.

## COMMON ALLEGATIONS

15. Plaintiffs are all former employees of the Chrysler Corporation ("CC") and/or DaimlerChrysler Corporation, and/or their partially or wholly owned subsidiaries and were employed by the same prior to 2007.

16. In 1998, CC agreed to merge with Daimler-Benz AG ("DBAG"), which was the former name of Daimler, to form a new company, Daimler Chrysler AG ("DCAG").

17.     As a part of the merger, CC was renamed DaimlerChrysler Corporation ("DCC"), and became a wholly-owned subsidiary of DCAG.

18.     Under the plan of merger, DCC became the employer of CC's employees, including Plaintiffs.

19.     On August 3, 2007, DCAG sold a majority interest in DCC to Cerberus Capital Management, L.P. ("Cerberus") and the company became known as Chrysler LLC.

20.     Following the sale, DCAG changed its name to Daimler AG ("Daimler").

21.     On April 30, 2009, Chrysler LLC filed for bankruptcy protection.

22.     When Chrysler LLC emerged from the bankruptcy proceeding, neither Daimler nor Cerberus held any interest in the new company, which was now jointly owned by Fiat SpA, the United Auto Workers of America, and the governments of the United States and Canada ("Chrysler Group LLC").

23.     While employed by CC and/or DCC, Plaintiffs were participants in the SRP, which was an employee benefit plan providing retirement benefits to eligible employees.

24.     The SRP was a non-qualified pension plan under the Internal Revenue Code, and as such, was not federally insured by the United States Pension Benefit Guaranty Corporation.

25.     Under the terms of the SRP, Plaintiffs were entitled to receive a monthly payment from the SRP upon their retirement.

26.     A Rabbi Trust was established by CC pursuant to a written trust agreement between CC and State Street and Other Fiduciaries in order to: (1) provide for the payment of SRP retirement benefits; (2) reimburse CC for payments of SRP retirement benefits made directly to SRP participants; and (3) provide for payment of the expenses associated with the administration of the Rabbi Trust.

27.     A copy of the Rabbi Trust agreement is attached hereto as **Exhibit A.**

9

28.     The Rabbi Trust agreement is a separate legal document, which sets forth its own administrative procedures, and imposes obligations upon the individuals and entities responsible for the management and administration of the Rabbi Trust.

29.     The Rabbi Trust was administered by Defendant State Street and Defendants Zetsche, Lasorda (a member of DCC's board of directors), John Doe and Mary Roe (who consist of members of an Employee Benefits Committee, a Pension Fund Review Committee, a Compensation Committee and/or the Board of Directors whose identities are presently unknown to Plaintiffs) (hereinafter referred to as the "Other Fiduciaries"), with the consent, approval and guidance of Daimler.

30.     Section 2.2 of the Rabbi Trust provides:

Designated Fiduciaries:  The following Fiduciaries are designated to control and manage the operation and administration of this Trust:
(a)     The Board of Directors;
(b)     The Employee Benefits Committee;
(c)     The Pension Fund Review Committee;
(d)     Any Investment Manager; and
(e)     The Trustee.

31.     State Street was designated as the Trustee of the Rabbi Trust.

32.     The Rabbi Trust requires each of the Designated Fiduciaries to "act in accordance with this intent and the terms of this Agreement using the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

33.     The Employee Benefits Committee was charged with, among other things, "sole authority and responsibility for . . . the promulgation of appropriate directions to implement benefit payments from the Trust, provided that such determination is made in good faith,"

pursuant to Section 2.7(b) of the Rabbi Trust.

34.     The Employee Benefits Committee was also charged with, among other things, "sole authority and responsibility for . . . all . . . acts permitted or required to be performed by the Corporation under [the Rabbi Trust]" except for notifying State Street of insolvency, a change in control and/or potential change in control, pursuant to Section 2.7(f) of the Rabbi Trust.

35.     Notwithstanding that the Employee Benefits Committee was charged with sole responsibility and authority for ensuring that the Corporation performed its obligations under the Rabbi Trust, Daimler required that all major actions of the Employee Benefits Committee be presented to, and approved by, DCC's Board of Directors and Daimler's board of management.

36.     State Street was charged with "sole authority and responsibility for . . . [t]he control, management, investment, and reinvestment of the assets of the Trust," pursuant to Section 2.9(a)(i).

37.     Under Section 2.9(a)(v) of the Rabbi Trust, State Street was also charged with, among other things, "sole authority and responsibility for" making an independent determination as to the proper distributions under the SRP, and making distributions to the beneficiaries of the Rabbi Trust in accordance with State Street's independent determination in the event that:

(a)     The Employee Benefits Committee does not provide timely instructions for the distribution of benefits under the SRP;

(b)     State Street determines that the Employee Benefits Committee's instructions for the distribution of SRP benefits were not provided in good faith;

(c)     The Employee Benefits Committee did not provide timely instructions for the distribution of SRP benefits after a Change in Control; and/or

(d)     State Street questions the correctness of the Employee Benefits Committee's instructions for the distribution of SRP benefits after a Change in Control.

11

38.     Section 2.1 of the Rabbi Trust provides in relevant part that:

. . . the Trust shall be held and used only for one of the following purposes:    (1) to pay any benefits that become payable to participating employees . . . ; (2) to reimburse the Employer . . . for payments made to participants . . . ; or (3) to pay the expenses, including Trustees' fees, incurred in the administration of this Trust . . . .

39.     Section 3.2 of the Rabbi Trust provides that:

*It shall be impossible,* at any time prior to the satisfaction of all liabilities with respect to the participants or beneficiaries under the Plan and to Insolvency Creditors, if any, for any part of the participants or beneficiaries under the Plan and to Insolvency Creditors, if any, *for any part of the corpus or income of the Trust,* other than such part as is required to pay taxes and administration expenses or to reimburse the Employer or any Participating Subsidiary for payments made under the Plan as herein provided, *to be used for, or diverted to, purposes other than for the exclusive benefit of such participants* or their beneficiaries, or such Insolvency Creditors. (emphasis added).

40.     Section 3.1.1 of the Rabbi Trust provides that:

Prior to, or within thirty (30) days immediately following, a Potential Change in Control . . . , the Corporation must deliver to the Trustee to be held in trust hereunder a contribution (the "Required Funding Amount")) having a fair market value equal to (x) the "Commuted Value" (as defined in the Plan) of the amount of Benefits due to the participants (and their beneficiaries) under the Plan, assuming . . . . the termination of the employment of the participants within the two-year period immediately following the Change in Control in such a manner as to produce the maximum Benefits with respect to each participant under the Plan, reduced by (y) the fair market value of the assets then held in trust hereunder.

41.      In other words, the Rabbi Trust was required to be fully funded within 30 days of any Potential Change of Control.

42.     A Potential Change in Control, as defined by the Rabbi Trust, occurred in May 2007 when Daimler agreed to sell a majority interest in DCC to Cerberus.

43.    A Potential Change in Control, as defined by the Rabbi Trust, also occurred in March or April 2009 when Daimler and Cerberus signed a binding term sheet for the redemption of Daimler's remaining 19.9% interest in Chrysler LLC.

44.    Section 3.1.2 of the Rabbi Trust provides in relevant part:

> Upon the occurrence of a Change in Control and at six-month intervals thereafter, . . . .  If the Required Funding Amount . . . exceeds the fair market value of the assets then held in trust hereunder, the Corporation shall promptly (and in no event later than thirty (30) days from the date of such six-month interval date) deliver to the Trustee a contribution equal to such excess.

45.    In other words, the Rabbi Trust is required to be fully funded within 30 days of any Change in Control, and "topped off" at six month intervals thereafter such that it consistently remains fully funded following any such change in control.

46.    A Change of Control, as defined by the Rabbi Trust, occurred in 1998 at the time of the merger between CC and DBAG.

47.    A Change of Control, as defined by the Rabbi Trust, also occurred in August 2007 when DCAG sold a majority interest in DCC to Cerberus.

48.    Had the Rabbi Trust been fully funded as required by Sections 3.1.1 and 3.1.2 of the Rabbi Trust, there would have been sufficient assets in the Rabbi Trust to securitize the SRP retirement benefits of all SRP participants at any given time between 1998 and the time that Chrysler LLC filed for bankruptcy.

49.    Upon information and belief, when Cerberus acquired a majority interest in DCC, the Rabbi Trust had assets in excess of $200 million.

50.    At the time of Chrysler LLC's bankruptcy, the Rabbi Trust had a mere $117,163

in assets remaining.

51.    Upon information and belief, the approximately $200 million that was removed from the Rabbi Trust between August 2007 and the time that Chrysler LLC filed for bankruptcy was used for impermissible purposes in violation of Sections 2.1 and 3.2 of the Rabbi Trust.

52.    Upon information and belief, the Rabbi Trust was not fully funded at six month intervals as required by Section 3.1.2 of the Rabbi Trust.

53.    Upon information and belief, the Rabbi Trust was not fully funded after the Potential Change in Control in March or April 2009 when Daimler and Cerberus signed a binding term sheet for the redemption of Daimler's remaining 19.9% interest in Chrysler as required by Section 3.1.1 of the Rabbi Trust.

54.    From 2005 through April 2009, Defendants all knew or believed that DCC was suffering serious financial difficulties and was in danger of filing for bankruptcy.

55.    Defendants knew that if DCC filed for bankruptcy protection, the assets in the Rabbi Trust would become part of the bankruptcy estate of DCC and be subject to the claims of DCC's unsecured creditors.

56.    In 2005 and/or 2006, LaSorda and the Other Fiduciaries decided to institute a practice of purchasing annuities, providing lump sum payments, transferring benefits to a qualified retirement plan, or otherwise securitizing the SRP retirement benefits of participants in the plan who were at that time still actively employed by DCC, including themselves.

57.    In addition, upon information and belief, Defendants purchased annuities, provided lump sum payments, transferred benefits to a qualified retirement plan, or otherwise

14

securitized the SRP retirement benefits for selected retired employees of DCC.

58.     By converting some of the assets of the Rabbi Trust into annuities, providing lump sum payments, or transferring benefits to a qualified retirement plan, those assets were protected from becoming part of the bankruptcy estate, and the active employees that received the annuities would be able to receive all or a major portion of their SRP retirement benefits even if DCC filed for bankruptcy.

59.     LaSorda and the Other Fiduciaries acted to protect the SRP retirement benefits of only the actively employed SRP participants, including themselves.

60.     Defendants did not purchase annuities or otherwise securitize all of the SRP retirement benefits payable to the vast majority of the former employees of CC and DCC eligible to receive SRP retirement benefits, including Plaintiffs.

61.     State Street and Other Fiduciaries failed, refused and neglected to purchase annuities, provide lump sum payments, transfer benefits to a qualified retirement plan, otherwise securitize the SRP retirement benefits for all of the participants in the SRP, even though it would have been prudent, and in the best interests of all of the participants of the SRP to do so.

62.     Plaintiffs were excluded from the purchase of annuities, lump sum payments, transfer of benefits to a qualified retirement plan, or other securitization of the SRP retirement benefits.

63.     This action to buy annuities, provide lump sum payments, transfer benefits to a qualified retirement plan, or otherwise securitize SRP retirement benefits for only the actively employed SRP participants was presented to and approved by the DCAG Board of Management in Germany.

64.     Upon information and belief, Defendants' practice of securitizing the SRP retirement benefits of actively employed SRP participants continued until the time of Chrysler's

15

bankruptcy.

65.     As a group, Plaintiffs were older than the group of participants whose SRP retirement benefits were securitized.

66.     Defendants knew that Chrysler LLC was in a precarious financial position at all times between 2005 and the time that Chrysler LLC filed for bankruptcy.

67.     Upon information and belief, the assets of the Rabbi Trust were improperly used for the operational expenses of Chrysler LLC and/or its subsidiaries, contrary to the terms of the Rabbi Trust and in derogation of the rights of Plaintiffs, who were participants in the SRP.

68.     Upon information and belief, the assets of the Rabbi Trust were also used to fund buyouts and other corporate obligations to certain executives of Chrysler, LLC, contrary to the terms of the Rabbi Trust.

69.      The Chrysler LLC bankruptcy was structured with the aid of the United States government in such a fashion that the majority of pension plans and related trusts were allowed to survive the bankruptcy intact.

70.     Upon information and belief, had the Rabbi Trust been fully funded, the United States government would have required new Chrysler Group LLC to assume the Rabbi Trust and the SRP obligations of retirees over 62 consistent with their action on all other pensions, and each of the Plaintiffs herein would have continued to receive their hard earned promised retirement benefits.

71.     The participants in the SRP, including LaSorda and the Other Fiduciaries whose benefits had been protected by annuities, lump sum payments, transfers to a qualified retirement plan or otherwise securitized prior to Chrysler LLC's bankruptcy did not lose their SRP

retirement benefits as a result of the bankruptcy.

72.     Had State Street and Other Fiduciaries purchased annuities, provided lump sum payments, transferred benefits to a qualified retirement plan, or otherwise securitized the SRP retirement benefits for all of the participants in the SRP, Plaintiffs would have received their SRP retirement benefits.

73.     Those Plaintiffs who had reached the age of 62 prior to May 1, 2009, and who had been receiving monthly retirement benefits from the SRP, received their last SRP payment on April 1, 2009.

74.     Those Plaintiffs who had not reached the age of 62 prior to April 2009 continued receiving SRP retirement payments from Chrysler Group LLC, but have been informed that their SRP retirement benefits would stop when they reach the age of 62.

## COUNT I - Age Discrimination against All Defendants

75.     Plaintiffs reallege and incorporate paragraphs 1-74 of their First Amended Complaint as if same were set forth word for word herein.

76.     As a whole, Plaintiffs were much older than the group of SRP participants whose SRP retirement benefits were annuitized, paid in a lump sum, transferred to a qualified retirement plan and/or otherwise securitized by Defendants.

77.     State Street and the Other Fiduciaries were agents of DCC and Chrysler LLC and were charged by DCC and Chrysler LLC with the responsibility of administering the SRP.

78.     Defendants owed a duty to Plaintiffs to refrain from discriminating against them in terms of their compensation and privileges of employment on the basis of age pursuant to the Elliott Larsen Civil Rights Act ("ELCRA"), M.C.L. § 37.2202(1)(a) and the Age Discrimination in Employment Act ("ADEA"), 29 U.S.C. § 621 et seq.

79.     Participation in the SRP was a privilege and benefit afforded to Plaintiffs as a

17

result of their employment at CC and DCC and was part of their overall compensation package.

80. Defendants decided to institute a practice of securitizing the SRP retirement benefits of only actively employed participants of the SRP.

81. Defendants' decision to securitize only SRP retirement benefits of only the actively employed SRP participants had the effect of discrimination against Plaintiffs on the basis of age, and was therefore wrongful and in violation of the ELCRA and the ADEA.

82. As a direct and proximate result of Defendants' discriminatory acts, Plaintiffs have suffered damages, including but not limited to, loss of benefits, mental distress and attorney fees.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in their favor against Defendants in an amount that is fair and just in excess of $75,000.00, plus exemplary damages, interest, costs and attorney fees.

### COUNT II – Breach of The Rabbi Trust against State Street

83. Plaintiffs reallege and incorporate paragraphs 1-82 of their Complaint as if same were set forth word for word herein.

84. The Rabbi Trust is a valid contract and is enforceable against State Street.

85. The Employee Benefits Committee's instructions (which were approved by Daimler and LaSorda) to disburse Rabbi Trust assets in order to securitize the SRP benefits of active employees only were not made in good faith.

86. State Street breached its obligations under the Rabbi Trust by failing to disregard instructions of the Employee Benefits Committee that were not made in good faith, and failing to make an independent determination as to the proper distributions under the SRP.

87. State Street further breached its obligations under the Rabbi Trust by permitting the use of Rabbi Trust assets for impermissible purposes, and failing to make an independent determination as to the proper distributions under the SRP.

88. State Street also breached its obligations under the Rabbi Trust by failing to terminate the Rabbi Trust and distribute the assets of the Rabbi Trust to the SRP Participants upon the Corporation's failure to fully fund the Rabbi Trust at six month intervals following the Changes in Control in 1998 and 2007 and/or following the Potential Changes in Control in 2007 and 2009.

89. State Street's conduct, as described in paragraphs 80-82 above, also constitutes a breach of State Street's obligation to "act in accordance with [the intent of the Rabbi Trust] using the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

90. As a direct and proximate result of State Street's breaches of its obligations under the Rabbi Trust, Plaintiffs have suffered actual harm, including but not limited to, loss of benefits and attorney fees.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in their favor against State Street pursuant to 29 U.S.C. § 1132(a) providing for relief that is fair and just, plus any applicable pre- and post-judgment interest, costs and attorney fees pursuant to 29 U.S.C. §1132(g)(i).

**COUNT III – Breach of the Rabbi Trust against Daimler**

91. Plaintiffs reallege and incorporate paragraphs 1-90 of their Complaint as if same

were set forth word for word herein.

92.     The Rabbi Trust is a valid contract and is enforceable against Daimler.

93.     Daimler breached the terms of the Rabbi Trust by approving the disbursement of Rabbi Trust assets for purposes of securitizing the SRP benefits of active employees only, which disbursement was not carried out in good faith.

94.     Daimler further breached the terms of the Rabbi Trust by approving the disbursement of Rabbi Trust assets for impermissible purposes.

95.     Daimler also breached the terms of the Rabbi Trust by exercising control over decision not to fully fund the Rabbi Trust as six month intervals following the Changes in Control in 1998 and 2007 and/or within 30 days of the Potential Change in Control in May 2007.

96.     Daimler also breached the terms of the Rabbi Trust by failing to "act in accordance with [the intent of the Rabbi Trust] using the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

97.     Daimler was subject to the duty of care, skill, prudence and diligence imposed by the Rabbi Trust because it exercised ultimate discretionary control over all major decisions regarding the Rabbi Trust.

98.     Specifically, Daimler's duty of care, skill, prudence and diligence required that they act to securitize all of the SRP participants' retirement benefits, including Plaintiffs.

99.     As a direct and proximate result of Daimler's breaches of its obligations under the

Rabbi Trust, Plaintiffs have suffered actual harm, including but not limited to, loss of benefits and attorney fees.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in their favor against State Street pursuant to 29 U.S.C. § 1132(a) providing for relief that is fair and just, plus any applicable pre- and post-judgment interest, costs and attorney fees pursuant to 29 U.S.C. §1132(g)(i).

**COUNT IV – Breach of the Rabbi Trust against LaSorda and the Other Fiduciaries**

100.    Plaintiffs reallege and incorporate paragraphs 1-99 of their Complaint as if same were set forth word for word herein.

101.    LaSorda and the Other Fiduciaries breached the terms of the Rabbi Trust by failing to "act in accordance with this intent and the terms of this Agreement using the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of like character and with like aims."

102.    Specifically, LaSorda and the Other Fiduciaries' duty of care, skill, prudence and diligence required that they act to securitize all of the SRP participants' retirement benefits, including Plaintiffs.

103.    LaSorda and the Other Fiduciaries also breached the terms of the Rabbi Trust by recommending and/or approving the disbursement of Rabbi Trust assets for purposes of securitizing the SRP benefits of active employees only, which disbursement was not carried out in good faith.

104.    LaSorda and the Other Fiduciaries further breached the terms of the Rabbi Trust by approving the disbursement of Rabbi Trust assets for impermissible purposes.

105.    LaSorda and the Other Fiduciaries also breached the terms of the Rabbi Trust by exercising control over decision not to fully fund the Rabbi Trust as six month intervals following the Changes in Control.

106.    As a direct and proximate result of LaSorda and the Other Fiduciaries' breaches of their obligations under the Rabbi Trust, Plaintiffs have suffered actual harm, including but not limited to, loss of benefits and attorney fees.

WHEREFORE, Plaintiffs pray that this Honorable Court enter judgment in their favor against State Street pursuant to 29 U.S.C. § 1132(a) providing for relief that is fair and just, plus any applicable pre- and post-judgment interest, costs and attorney fees pursuant to 29 U.S.C. §1132(g)(i).

## <u>DEMAND FOR A TRIAL BY JURY</u>

NOW COME the above-named Plaintiffs, by and through their attorneys, the Law Offices of Sheldon L. Miller and Morganroth & Morganroth, PLLC, and hereby demands a trial by jury in the above entitled matter.