# EXHIBIT A

UNITED STATES DISTRICT COURT FOR THE

EASTERN DISTRICT OF MICHIGAN

JOHN LOFFREDO ET AL,

      Plaintiffs,

v

                                     Case No. 2:10-cv-14181-JAC-VMM
                                     Hon. Julian A. Cook
                                     Magistrate Judge Virginia M. Morgan

DAIMLER AG, a foreign corporation,
STATE STREET BANK AND TRUST COMPANY,
a Massachusetts Trust Company,
THOMAS LASORDA, an individual,
JOHN DOE and MARY ROE, individuals,

      Defendants.

/

Sheldon L. Miller (P17785)
LAW OFFICES OF SHELDON MILLER
**Attorneys for Plaintiffs**
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
(248) 538-3400
(248) 538-5280 Fax

Mayer Morganroth (P17966)
Jeffrey B. Morganroth (P41670)
MORGANROTH & MORGANROTH, PLLC
**Co-Counsel for Plaintiffs**
344 North Old Woodward Avenue
Suite 200
Birmingham, MI 48009
(248) 864-4000
(248) 864-4001 Fax

Lawrence G. Campbell (P11553)
Thomas G. McNeill (P36895)
L. Pahl Zinn (P57516)
DICKINSON WRIGHT PLLC
**Attorneys for Daimler AG and
Thomas Lasorda**
500 Woodward Avenue, Suite 4000
Detroit, MI 48226
(313) 223-3500
(313) 223-3598 Fax

Alan S. Goudiss
Jaculin Aaron
SHEARMAN & STERLING LLP
**Attorneys for Daimler AG**
599 Lexington Avenue
New York, NY 10022
(212) 848-4000

J. Timothy Mast
TROUTMAN SANDERS LLP
**Attorney for Thomas Lasorda**
600 Peachtree Street, NE Suite 5200
Atlanta, GA 30308-2216
(404) 885-3312

Wilbur H. Boies
Nancy G. Ross
MCDERMOTT WILL & EMERY LLP
**Attorneys for State Street Bank & Trust, Co.**
227 W. Monroe Street
Chicago, IL 60606
(312) 984-7686

Abraham Singer (P23601)
James D. VandeWyngearde (P58634)
PEPPER HAMILTON LLP
**Attorneys for State Street Bank & Trust, Co.**
Suite 3600
100 Renaissance Center
Detroit, MI 48243-1157
(313) 259-7110

# PLAINTIFFS' REPLY BRIEF IN FURTHER SUPPORT OF PLAINTIFFS' MOTION FOR LEAVE TO AMEND COMPLAINT

## ARGUMENT

I.  **PLAINTIFFS' PROPOSED CLAIMS UNDER THE RABBI TRUST WERE NEVER PRESENTED TO THIS COURT, EXPRESSLY WERE NOT DECIDED BY THE SIXTH CIRCUIT, AND THEREFORE CANNOT POSSIBLY BE BARRED BY THE ORDER OF DISMISSAL AND/OR THE MANDATE.**

Defendants point to the law of the case doctrine and the mandate rule, without acknowledging that Rule 15(a)'s requirement that leave to amend be "freely given" continues to apply even after a matter has been remanded for further proceedings. See, *Bromley v. Michigan Educ. Association-NEA,* 178 F.R.D. 148, 153-154 (E.D. Mich. 1998), citing *Texarkana v. Arkansas Gas Co.,* 306 U.S. 188, 203 (1939).

"The basic tenet of the mandate rule is that the district court is bound to the scope of the remand issued by the court of appeals." *United States v. Campbell,* 168 F.3d 263, 265 (6th Cir. 1999). Mandates for remand are classified as general or limited, and "[i]n the absence of an explicit limitation, the remand order is presumptively a general one." *United States v. Moore,* 131 F.3d 595, 598 (6th Cir. 1997). "General remands, in contrast, give the District Court authority to address all matters as long as remaining consistent with the remand." *Campbell,* 168 F.3d at 265. The Mandate issued in this case does not contain any express limitations upon the issues that may be addressed by this Court on remand, nor addressed Plaintiffs' proposed new claims under the Rabbi Trust. To the contrary, the Court of Appeals expressly declined to whether Plaintiffs had viable claims based upon the terms of the Rabbi Trust because:

> [Plaintiffs] did not allege [in their original Complaint] conduct of the defendants that violated provisions of any trust document . . . . On appeal, the plaintiffs for the first time point to particular conduct and particular contractual obligations to support their claim of breach. But because the plaintiffs did not present these claims to the district court, they cannot do so for the first time on appeal.

1

Sixth Circuit Opinion, p. 15. Because the Sixth Circuit expressly declined to address Plaintiffs'
proposed new claims under the Rabbi Trust, the Mandate cannot possibly preclude this Court
from considering Plaintiffs' current motion for leave to amend their Complaint in order to allege
such claims. See, *Jones v. Lewis,* 957 F.2d 260, 262 (6th Cir. 1992) (the trial court "may consider
those issues not decided expressly or impliedly by the appellate court or a previous trial court.").
The viability of Plaintiffs' claims under the Rabbi Trust is an issue that ***expressly*** was not
decided by the Sixth Circuit, and therefore, may be considered by this Court. *Id.*

Similarly, granting Plaintiffs leave to amend would not violate the law of the case
doctrine. "The 'law of the case' doctrine precludes a court from 'reconsideration of ***identical
issues.***'" *Caldwell v. City of Louisville,* 200 Fed. Appx. 430, 433 (6th Cir. 2006), quoting
*McKenzie v. BellSouth Telecommunications, Inc.,* 219 F.3d 508, 513 n.3 (6th Cir. 2000)
(emphasis added). Plaintiffs' proposed First Amended Complaint ("FAC") alleges particular
conduct of Defendants that violated particular contractual obligations imposed upon Defendants
under the Rabbi Trust—Plaintiffs' original Complaint did not contain any such allegations.
Therefore, the instant Motion does not present any ***"identical issues"*** for reconsideration, and
granting Plaintiffs' motion cannot possibly be inconsistent with the portion of this Court's June
6, 2011 Order (the "Order") dismissing the state law claims asserted in Plaintiffs' original
Complaint and declining to offer Plaintiffs an opportunity to file ERISA claims ***based upon the
facts alleged by Plaintiffs in the original Complaint.*** See, Sixth Circuit Opinion at p. 15, citing
*Harvey v. Great Seneca Fin. Corp.,* 453 F.3d 324, 328 (6th Cir. 2006) ("[T]his court should not
assume facts that were not pled."). In other words, because Plaintiffs' proposed FAC presents
entirely new claims based upon the terms of the Rabbi Trust, that have not been previously

2

presented to this Court, the instant Motion does not seek "reconsideration of identical issues" that were addressed by this Court in the Order, and is not barred by the law of the case doctrine.

Defendants purport to rely upon the unpublished opinion of *Pipefitters Local 636 Ins. Fund v. Blue Cross & Blue Shield of Mich.*, 418 Fed. Appx. 430, 435 (6th Cir. 2011), which is not applicable to the present case. In *Pipefitters*, the "mandate dismissed the Fund's claim on the merits, as part of its determination whether the First Amended Complaint stated a claim for breach of an ERISA fiduciary duty." *Id.* There, on remand after the first appeal, the plaintiffs sought leave to restate their breach of fiduciary duty claim which was presented to, and dismissed by, the district court prior to the first appeal, and was substantively addressed and dismissed by the Sixth Circuit in the first appeal. The Sixth Circuit expressed concern that its opinion in the first appeal would be rendered an advisory opinion informing the plaintiffs how to properly plead their breach of fiduciary duty claim because the first opinion specifically explained the plaintiffs' pleading deficiencies. *Id.* Here, on the other hand, the Sixth Circuit expressly declined to address Plaintiffs' proposed claims under the Rabbi Trust because Plaintiffs' original Complaint did not present them to the District Court, nor advised Plaintiffs how to properly plead such claims.

In any event, even if the law of the case doctrine somehow applies, this Court should exercise its discretion to reconsider the Order because: (1) *Cigna v. Amara,* 131 S.Ct. 1866, 1880 (2011), which was decided more than a month after oral argument was held on Defendants' Motions for Summary Judgment, constitutes an intervening change in the law; and (2) Plaintiffs' proposed FAC alleges new facts relating to Defendants' obligations under the Rabbi Trust and their conduct in violation of such obligations. See, *Caldwell,* 200 Fed. Appx. at 433. Defendants have incorrectly asserted that Plaintiffs' proposed FAC does not incorporate new material factual

allegations regarding Plaintiffs' proposed new claims under the Rabbi Trust. To the contrary, the FAC alleges that: (1) Rabbi Trust assets were used for impermissible purposes; (2) Defendants were responsible for Chrysler's failure to fully fund the Rabbi Trust at six month intervals; (3) Daimler and LaSorda acted in bad faith in exercising control over the disbursement of Rabbi Trust assets; and (4) State Street failed to disregard the bad faith instructions regarding the disbursement of Rabbi Trust assets. **FAC at ¶¶ 51-52, 59, 63, 68, 86-88, 94-95 and 103-105.** Plaintiffs' original Complaint does not contain any such allegations. **Docket No. 1, Ex. A.**

## II.   ALL DEFENDANTS ARE FIDUCIARIES AND ARE SUBJECT TO LIABILITY UNDER THE TERMS OF THE RABBI TRUST.

ERISA defines a fiduciary as a party with "discretionary authority or discretionary control respecting management of [a] plan or . . . any authority or control respecting management or disposition of its assets." 29 U.S.C. § 1002(21)(A)(i). This Sixth Circuit has held that a party is a fiduciary where it exercises "'practical control over an ERISA plan's money.'" *Briscoe v. Fine,* 444 F.3d 478, 494 (6th Cir. 2006), quoting *IT Corp. v. Gen. Am. Life Ins. Co.,* 107 F.3d 1415, 1421 (9th Cir. 1997). The "disposition of funds held in an account over which it exerted control makes it a fiduciary to the extent that it exercised such control." *Id.* at 490.

The factual allegations of the FAC establish that each of the Defendants exercised control over the disposition of the funds held in the Rabbi Trust. State Street does not even dispute that it is a "fiduciary" under ERISA based upon the factual allegations of the FAC. With respect to Daimler and LaSorda, the FAC specifically alleges that Daimler and LaSorda exercised control over the funding of the Rabbi Trust, approved the disbursement of the Rabbi Trust assets for impermissible purposes, and approved the decision to use Rabbi Trust assets to securitize the benefits of only the actively employed beneficiaries of the Rabbi Trust. **FAC at ¶¶ 59-63, 93-95 and 103-105.** LaSorda incorrectly argues that the FAC does not contain any allegations that he

4

exercised authority or control over plan administration, and that he was not a member of the employee benefits committee that was responsible for administration of the plan. To the contrary, the FAC specifically alleges that: (1) LaSorda actually exercised control over the Rabbi Trust; (2) Daimler required that all major actions of the committee be approved by the board of directors (of which LaSorda was a member); and (3) LaSorda approved the employee benefits committee's instructions regarding the disposition of Rabbi Trust assets. **FAC at ¶¶ 29, 35 and 85.** In addition, Plaintiffs believe that LaSorda and Dieter Zetsche travelled to Germany for the specific purpose of requesting and obtaining Daimler's Board of Management for permission to use the Rabbi Trust assets to securitize the retirement benefits for only active employees. Whether or not LaSorda was a member of the employee benefits committee,[1] he actually exercised discretionary authority and control over the administration of the Rabbi Trust and the disposition of the Rabbi Trust assets, and is a "fiduciary" as defined by ERISA.

Daimler and LaSorda appear to concede that claims under ERISA's civil enforcement provision may be brought against individuals or entities that control administration of an ERISA plan. Daimler's Brief at p. 15; LaSorda's Brief at p. 11. This interpretation of ERISA's civil enforcement provision is consistent with ERISA's primary objective of protecting the interests of employees. See, 29 U.S.C. § 1001(b) ("It is hereby declared to be the policy of this Act to protect interstate commerce and the interests of participants in employee benefit plans and their beneficiaries . . ."); *Firestone Tire & Rubber Co. v. Bruch,* 489 U.S. 101, 113-114 (1989) (declining to apply an interpretation of Section 1132 that is inconsistent with ERISA's express purpose of protecting the interests of employees in employee benefit plans); *Metropolitan Life Ins. Co. v. Glenn,* 554 U.S. 105, 113-114 (2008) (explaining that "Congress' desire to offer

---

[1] Plaintiffs have also named the members of the employee benefits committee, whose identities are unknown to Plaintiffs at this time, as defendants in this lawsuit—named as "John Doe" and "Mary Roe."

employees enhanced protection for their benefits" outweighs all of ERISA's other objectives combined). If the parties exercising actual discretionary control over plan administration and disposition of plan assets were not held accountable for actions in violation of ERISA and/or the terms of the plan, they would have no incentive to abide by their obligations thereunder in contravention of ERISA's sacrosanct purpose of protecting employees. The FAC specifically alleges that both Daimler and LaSorda exercised control over plan administration, including the disposition of the funds in the Rabbi Trust, and there is no dispute that State Street had control over the disposition of the Rabbi Trust assets. **FAC at ¶¶ 93-95 and 103-105.** Therefore, each of the Defendants is subject to liability under the terms of the Rabbi Trust arising from their actual exercise of control over the disposition of the Rabbi Trust assets.

Daimler and LaSorda further incorrectly argue that they cannot be held liable under the Rabbi Trust because they are not expressly named as parties to it. This argument is factually flawed as to LaSorda because he was a member of the Board of Directors, and as such, is expressly named as a fiduciary under the agreement. **Rabbi Trust, § 1.8.** Neither Daimler nor LaSorda cite a single ERISA case to support their incorrect position that an individual or entity is not expressly named as a party to an ERISA plan, but actually exercises control over the disposition of plan assets, cannot be held liable under ERISA's civil enforcement provision. The relevant case law holds that the parties actually exercising control over the disposition over plan assets are subject to liability. See, *Daniel v. Eaton Corp.,* 839 F.2d 263, 266 (6th Cir. 1988) (holding that an employer that is not expressly designated as a plan administrator is a proper defendant in an action for benefits under ERISA where it is "shown to control administration of a plan"); and *Gore,* 477 F.3d at 842 (finding that an employer was not liable because it did not exercise discretionary control over plan administration). Daimler and LaSorda's proffered

interpretation of ERISA is also entirely inconsistent with ERISA's primary objective of protecting the interests of employees for the same reasons discussed in the preceding paragraph.

In any event, even if individuals or entities not expressly named as parties to an ERISA plan cannot be held liable under the terms of the Rabbi Trust pursuant to Section 1132(a)(1)(B), they can be held liable under Section 1132(a)(3), which provides for "appropriate equitable relief." Section 1132(a)(3) allows: (1) this Court to reform the Rabbi Trust in order to name the parties actually exercising control as parties to the agreement, and then impose liability under the agreement as reformed; and/or (2) Plaintiffs to recover monetary relief in order to redress injuries sustained as a result of Defendants' violation of the terms of the Rabbi Trust (so long as Defendants are ERISA fiduciaries, which they are). See, *CIGNA,* 131 S. Ct. at 1879-1880.

Daimler and LaSorda also incorrectly argue that Section 8.8 of the Rabbi Trust and Section 10.07 of the SRP release Defendants from any liability under the Rabbi Trust. First, releases of future liability under ERISA are not enforceable as a matter of public policy. See, *Schumacher v. AK Steel* 2013 U.S. App. LEXIS 6161, 18-20 (6th Cir. 2013) (noting that it is well settled that agreements to waive future violations of ERISA and/or ERISA plans are void and collecting relevant case law) (attached hereto as **Exhibit 1**). Second, Section 10.07 of the SRP does not even purport to release any liability arising under the Rabbi Trust, and therefore cannot possibly bar the claims asserted by Plaintiffs in the FAC (it only refers to claims arising under the SRP). Third, Section 8.8 of the Rabbi Trust is not a release, and merely states that the beneficiaries of the Rabbi Trust and employees or creditors of Chrysler are not entitled to notice and/or *required* to be named as parties in the event of litigation regarding the Rabbi Trust. Section 8.8 of the Rabbi Trust does not even mention corporate officers such as LaSorda, nor Daimler, let alone release either of them from liability. Section 8.8 of the Rabbi Trust also does

7

not **prohibit** any individual or entity from being named as parties in the event of such litigation, but rather is intended to avoid the burden of having to name hundreds of Rabbi Trust beneficiaries as parties to litigation between regarding the management of the Rabbi Trust that does not directly concern the individual beneficiaries.

LaSorda and Daimler also incorrectly argue that Plaintiffs' claims under the Rabbi Trust are futile because Section 4.15D of the SRP authorizes the selective purchase of annuities and/or provision lump sum payments. This argument fails for four independent reasons. First, Section 4.15D of the SRP does not govern the use of Rabbi Trust assets at all (the Rabbi Trust agreement is a separate legal document governing the use of Rabbi Trust assets), let alone authorize Defendants to use Rabbi Trust assets to protect the benefits of only actively employed beneficiaries. Second, Section 8.6 of the Rabbi Trust provides that, in the event of a conflict between the terms of the SRP and the Rabbi Trust, the terms of the Rabbi Trust control. **Rabbi Trust, § 8.6.** Third, whether Defendants' conduct complied with Section 4.15D of the SRP, is irrelevant to whether Defendants' conduct complied with their separate obligations under the Rabbi Trust, which among other things, required Defendants to act in good faith and with prudence. **See, Rabbi Trust, § 2.1.** Fourth, and finally, Defendants were obligated to exercise their discretion regarding the purchase of annuities and provision of lump sum payments in good faith, and the FAC specifically alleges that Defendants failed to exercise that discretion in good faith. *Goldstein v. Johnson & Johnson,* 251 F.3d 433, 444 (3rd Cir. 2001), *quoting* Restatement (Second) of Contracts § 205 & cmt. a (holding that under ordinary contract principles, a top-hat plan administrator who is contractually afforded discretion in administering and interpreting the terms of the plan is subject to and bound by the implied duty of good faith).[2]

---

[2] The Rabbi Trust includes a choice of law provision specifying New York law, which also requires Defendants to act in good faith in exercising their discretion under the Rabbi Trust. **Rabbi Trust, § 8.2, p. 20.** *Dalton v.*

In any event, even if Defendants somehow cannot be held liable for acting in bad faith by protecting the benefits of only the actively employed Rabbi Trust beneficiaries (and LaSorda acting to protect his own benefits), the proposed FAC also alleges that Defendants breached their obligations under the Rabbi Trust in other manners which have nothing to do with that decision. Specifically, the proposed FAC also alleges that: (1) Daimler and LaSorda exercised discretionary authority with respect to Chrysler's failure to comply with its obligation to fully fund the Rabbi Trust under the change in control provisions; (2) State Street failed to disregard instructions for the disbursement of Rabbi Trust assets that were not made in good faith; (3) State Street failed to terminate the Rabbi Trust and disburse the Rabbi Trust assets to the beneficiaries upon Chrysler's failure to fully fund the Rabbi Trust at six month intervals following the changes in corporate control that occurred in 1998 and 2007; and (4) all Defendants exercised discretionary control over the disbursement of Rabbi Trust assets for impermissible purposes. **FAC at ¶¶ 85-88, 93-95 and 104-105.** Section 4.15D of the SRP cannot possibly insulate Defendants from liability for these breaches of their obligations under the Rabbi Trust inasmuch as they have nothing to do with Defendants' decision to protect only the actively employed Rabbi Trust beneficiaries' benefits by providing annuities or lump sum payments.

## III.   PLAINTIFFS HAVE NOT PROPOSED TO ASSERT A NEW CAUSE OF ACTION UNDER THE ADEA.

LaSorda and State Street argue that Plaintiffs' proposed ADEA claim is futile. This argument is a red herring because Plaintiffs have not proposed to assert a new cause of action under ADEA. To the contrary, Plaintiffs' proposed FAC merely points out that Defendants' alleged conduct was in violation of the ADEA. **FAC at ¶¶ 78 and 81.** This fact is important

---

*Educational Testing Serv.*, 87 N.Y.2d 384, 389 (1995) ("Implicit in all contracts is a covenant of good faith and fair dealing in the course of contract performance . . . Where the contract contemplates the exercise of discretion, this pledge includes a promise not to act arbitrarily or irrationally in exercising that discretion").

because ERISA's savings clause expressly states that ERISA "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States," and Plaintiffs' state law age discrimination cannot be preempted by ERISA to the extent that it is based upon conduct that violated the ADEA. See, Sixth Circuit Opinion at pp. 12-13; and 29 U.S.C. § 1144(d).

## CONCLUSION

For all of the foregoing reasons, Plaintiffs respectfully request that this Court GRANT the instant Motion, and enter an order granting Plaintiffs leave to file their First Amended Complaint. Alternatively, Plaintiffs request that this Court grant Plaintiffs leave to file an amended complaint containing the following categories of proposed amendments to which Defendants do not object: (1) adding new plaintiffs; (2) correcting the names of some existing plaintiffs; (3) revising the "Parties, Jurisdiction and Venue" allegations; and (4) revisions to the state law age discrimination claim.

Respectfully submitted,

MORGANROTH & MORGANROTH, PLLC

By: /s/Jeffrey M. Thomson
MAYER MORGANROTH (P17966)
JEFFREY M. THOMSON (P72202)
Counsel for Appellants
344 N. Old Woodward Ave., Suite 200
Birmingham, MI 48009
(248) 864-4000
Email: mmorganroth@morganrothlaw.com

LAW OFFICES OF SHELDON MILLER
SHELDON L. MILLER (P17785)
Counsel for Appellants
31731 Northwestern Hwy., Ste. 280W
Farmington Hills, MI 48334
Dated:  April 5, 2013                (248) 538-3400

# Exhibit  1



**WILLIAM J. SCHUMACHER, on behalf of himself and all persons similarly situated, Plaintiff-Appellee/Cross-Appellant, v. AK STEEL CORPORATION RETIREMENT ACCUMULATION PENSION PLAN and AK STEEL CORPORATION BENEFIT PLANS ADMINISTRATIVE COMMITTEE, Defendants-Appellants/Cross-Appellees.**

Nos. 12-3061/3063

UNITED STATES COURT OF APPEALS FOR THE SIXTH CIRCUIT

13a0084p.06; *2013 U.S. App. LEXIS 6161*; *2013 FED App. 0084P (6th Cir.)*

**October 10, 2012, Argued**
**March 28, 2013, Decided**
**March 28, 2013, Filed**

**PRIOR HISTORY:** [*1]

Appeal from the United States District Court for the Southern District of Ohio at Cincinnati. No. 1:09-cv-794--Sandra S. Beckwith, District Judge.
*West v. AK Steel Corp. Ret. Accumulation Pension Plan, 484 F.3d 395, 2007 U.S. App. LEXIS 9108 (6th Cir. Ohio, 2007)*

**COUNSEL:** ARGUED: Andrew R. Kaake, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellants/Cross-Appellees.

Matthew T. Hurst, SUSMAN, HEFFNER & HURST LLP, Chicago, Illinois, for Appellee/Cross-Appellant.

ON BRIEF: Andrew R. Kaake, George E. Yund, FROST BROWN TODD LLC, Cincinnati, Ohio, for Appellants/Cross-Appellees.

Matthew T. Hurst, SUSMAN, HEFFNER & HURST LLP, Chicago, Illinois, for Appellee/Cross-Appellant.

**JUDGES:** Before: BATCHELDER, Chief Judge; KEITH and MARTIN, Circuit Judges.

**OPINION BY:** DAMON J. KEITH

**OPINION**

[**2] DAMON J. KEITH, Circuit Judge. This class action case involves AK Steel's employees' Employee Retirement Income Security Act (ERISA) claims for a "whipsaw" calculation of their benefits from an AK Steel pension plan in which they participated before terminating their employment. This case is related to the case of *West v. AK Steel Corp. Retirement Accumulation Plan, 484 F.3d 395 (6th Cir. 2007)*. The Class was originally involved in the *West* litigation and included identical claims against the same defendants. The Class was excluded from the *West* litigation due to the [*2] class members' execution of a severance agreement and release that each of them signed during the *West* litigation. The district court ruled in favor of the Class, awarding partial summary judgment and an award of pre-judgment interest.

Appellants appeal three district court orders: 1) denial of a motion to dismiss; 2) grant of Schumacher's motion for class certification; and 3) grant of Schumacher's motion for partial summary judgment on liability. The Class cross-appeals the district court's decision to award pre-judgment interest at a rate of 0.12%.

For the reasons that follow, we **REVERSE** the

district court's award of pre-judgment interest and **REMAND** for further proceedings consistent with this opinion. We **AFFIRM** the district court's judgment in all other respects.

## FACTUAL BACKGROUND

Plaintiff-Appellee Cross-Appellant William Schumacher brought this case on behalf of himself and all persons similarly situated (collectively referred to as the "Class"). The Class in this case is a group of ninety-two former employees of AK Steel Corporation ("AK Steel") who participated in the Retirement Accumulation Pension Plan ("Plan" or "RAPP"). They each elected to receive a lump-sum payment of their [*3] retirement benefits under the Plan which is administered by AK Steel Corporation Benefit Plans Administrative Committee ("Administrative Committee"). They allege that [**3] the Defendants failed to properly calculate their payment. Their claims are essentially identical to the claims that were presented in *West v. AK Steel Corp. Retirement Accumulation Pension Plan, 484 F.3d 395 (6th Cir. 2007)*, where this Court affirmed the district court's decision that the Plan failed to utilize the so-called "whipsaw" formula to properly calculate lump-sum payments. Plaintiffs in this case were initially included within the definition of the class that was certified in *West*, but were ultimately excluded due to release agreements they signed after the *West* litigation began.

### *West* Litigation

After entry of the *West* class certification order, the Defendants brought to the attention of the district court that AK Steel had undertaken layoffs in the fall of 2003 after the litigation began, and had offered severance packages to some 300 employees. Ninety-two of the *West* class members accepted AK Steel's offer and executed severance agreements that generally included a release of "all claims" against AK Steel [*4] and its "related entities." The *West* Defendants moved for summary judgment against these ninety-two individuals. Alternatively, Defendants argued these individuals should be excluded from the already-certified class. Out of an abundance of caution, the district court also excluded the ninety-two individuals from the *West* class.

The *West* plaintiffs ultimately prevailed on the merits of their case and were awarded over $37 million in additional benefits under the whipsaw calculation, in addition to pre-judgment interest at the statutory post-judgment rate under *28 U.S.C. § 1961(a)*. At the time of judgment, the rate was 4.7%, which resulted in over $9 million in pre-judgment interest. We affirmed the district court's holdings.

### *Schumacher* Litigation

The complaint in the present case was filed on October 29, 2009, on behalf of a class of all participants in the Plan seeking "whipsaw" benefits who had been excluded from the *West* class. They received lump-sum payments between February 1, 1996 and August 17, 2006, and were previously excluded from other litigation due to their [**4] execution of a severance agreement and release. Therefore, some of the following facts occurred during the pendency [*5] of the *West* litigation.

The layoffs of the ninety-two plaintiffs in the present case started in the midst of the *West* litigation. The Human Resources Managers ("HR") notified the plaintiffs that they were being terminated. The employees were not told of the ongoing *West* litigation and neither was HR. HR followed a script when requesting the signatures. During the meeting with HR, employees were told that they would "receive information concerning pension benefits in the mail approximately 60-90 days following termination."

The agreements did not mention pension benefits, the Plan, the administrative committee, or ERISA. Paragraph 9 of each agreement states:

> You waive and release and forever discharge, on behalf of yourself and your heirs, representatives and assigns, AK Steel Holding Corporation, AK Steel Corporation and its predecessors, and past, current and future, subsidiaries, related entities, their officers, directors, shareholders, agents, employees, successors, or assigns, from any and all claims, causes of action, and rights of recovery of any kind or nature, including without limitation back or front pay or benefits, damages of any sort, debts, liabilities, and contract rights, [*6] and any costs, fees, or other expenses or attorneys' fees incurred in law or in equity, whether known or unknown. This waiver, release and discharge also includes but is not limited to any claims, whether known

or unknown (including those arising out of or relating to your employment with the Company and/or the separation of your employment with the Company) for discrimination, slander, libel, damage to reputation, emotional distress, attorney fees, compensatory damages, punitive damages, tort damages, breach of contract, quasi-contract, promissory estoppel, any violation of federal, state, local, statutory or common law, including but not limited to the *Age Discrimination in Employment Act of 1967*, the Older Workers' Benefit Protection Act, *Title VII of the Civil Rights Act of 1964*, the *Family and Medical Leave Act*, and the *Americans with Disabilities Act*. However, you do not waive, nor shall this Agreement be construed to waive, any right which is not subject to waiver as a matter of law. . . . However, [you do not waive any rights or claims you may have under the federal Age Discrimination in Employment Act that [**5] arise after the date you sign this Agreement. In addition,][1] you do [*7] not waive, nor shall this Agreement be construed to waive, any right which is not subject to waiver as a matter of law.

R. 87, at 5.

1   The bracketed language appears in the particular form of release that Schumacher and other class members over the age of forty signed. It does not appear in the release form signed by class members under the age of forty.

Schumacher, the named Plaintiff, was one of the employees who accepted a severance agreement and release. He worked at AK Steel and its predecessor, Armco Inc., from June 1962 until he retired in November 2003 at the age of 60. Schumacher executed a severance agreement sometime between late 2003 and early 2004. He, and the other Class members, claimed their pension benefits after the execution of the Severance Agreements, requesting a lump-sum payment. Schumacher's agreement did not include a whipsaw calculation.

Pre-Judgment Interest

Both the *West* and *Schumacher* classes were awarded pre-judgment interest under *28 U.S.C. § 1961(a)*. At the time of the *West* judgment, the class received pre-judgment interest at an annual rate of 4.7%. The *Schumacher* class received a rate of 0.12%.

**PROCEDURAL BACKGROUND**

Schumacher and the Class were originally [*8] included in the *West* Class on March 9, 2004. *West*, No. 02-0001, R. 55. The district court eventually excluded them from the *West* class "out of an abundance of caution." Schumacher was notified of his exclusion from the *West* class.

On October 29, 2009, Schumacher filed the present suit to recover benefits on behalf of himself and the class. On March 8, 2010, the district court denied Defendants' motion to dismiss, in which they raised a statute of limitations issue. On January 24, 2011, the court issued an order granting Plaintiff's motion for class certification. On June 27, 2011, the court granted Plaintiffs' motion for partial summary judgment.

[**6] The parties stipulated that the amount of unpaid benefits to this class was $3,010,060. On October 12, 2011 the district court issued an order ruling that pre-judgment interest was due at the federal statutory rate established by *28 U.S.C. § 1961(a)*. At the time of the judgment, that rate was 0.12%. Final Judgment for Plaintiffs was entered on December 12, 2011. Plaintiffs were awarded damages of $3,010,060 and pre-judgment interest of $29,094.

**STANDARD OF REVIEW**

This Court reviews a dismissal *de novo. Hughes v. Sanders, 469 F.3d 475, 477 (6th Cir. 2006).* [*9] We also review a district court's grant of a motion for summary motion *de novo*, construing the evidence and drawing all reasonable inferences in favor of the non-moving party. *Ireland v. Tunis, 113 F.3d 1435, 1440 (6th Cir. 1997).*

Certification of a class action is reviewed for an abuse of discretion. *Pipefitters Local 636 Ins. Fund v. Blue Cross Blue Shield of Mich., 654 F.3d 618, 629 (6th Cir. 2011).* A district court's award of pre-judgment interest is also reviewed for abuse of discretion. *Rybarczyk v. TRW, Inc., 235 F.3d 975, 985 (6th Cir. 2000).* "An abuse of discretion occurs when the district court relies on erroneous findings of fact, applies the

2013 U.S. App. LEXIS 6161, *9; 2013 FED App. 0084P (6th Cir.), **6

wrong legal standard, misapplies the correct legal standard when reaching a conclusion, or makes a clear error of judgment." *Pipefitters Local 636, 654 F.3d at 629* (internal citation and quotation marks omitted).

## DISCUSSION

This case involves the appeal of four of the district court's orders. AK Steel and the Plan (collectively "Appellants") appeal the district court's denial of their motion to dismiss based on the statute of limitations, the grant of the class certification, and the ruling in favor of the Class on liability. The Class [*10] appeals the district court's pre-judgment interest award rate. Each order is addressed below.

[**7] *A. Motion to Dismiss*

AK Steel and the Plan appeal the denial of their motion to dismiss. They contend that the Class's claims should have been dismissed as untimely. Appellants argue that the Class's "whipsaw" claims were barred by the federal catch-all statute of limitations contained in *28 U.S.C. § 1658(a)*. Upon de novo review, we hold that *§ 1658(a)* does not apply to the Class's claims.

"Where a federal statute provides a cause of action but does not specify a limitations period, courts determine the appropriate statute of limitations in one of two ways." *McCormick v. Miami Univ., 693 F.3d 654, 662 (6th Cir. 2012).* If a federal cause of action arises under a post-1990 amendment, the courts apply the four-year statute of limitations as provided by *28 U.S.C. § 1658*. If that is not the case, the courts borrow the state's most analogous limitations period. *See id.*

In a case involving a federal cause of action that arises under an Act of Congress that was enacted after December 1, 1990, the cause of action is "governed by *28 U.S.C. § 1658*, [*11] which prescribes a four-year statute of limitations period." *Id.* The Supreme Court has held that *§ 1658* applies to claims "arising under" amendments to pre-existing statutes. *Jones v. R.R. Donnelley & Sons Co., 541 U.S. 369, 380-81, 124 S. Ct. 1836, 158 L. Ed. 2d 645 (2004)*. Section *§ 1658* also applies where legislation "establishes a new cause of action without reference to preexisting law." *Id.* (internal quotation marks omitted).

In contrast, where an application of state law is not "at odds with the purpose or operation of federal substantive law," the court borrows the most analogous

state limitations period. *McCormick, 693 F.3d at 662* (quoting *N. Star Steel Co. v. Thomas, 515 U.S. 29, 35, 115 S. Ct. 1927, 132 L. Ed. 2d 27 (1995)*). Generally, the statute of limitations for an ERISA claim is governed by the most analogous state statute of limitations. *Santino v. Provident Life & Accident Ins. Co., 276 F.3d 772, 776 (6th Cir. 2001)*. Ohio law provides that the statute of limitations could be as short as six years or as long as fifteen years. *See Gelesky v. AK Steel Corp., 828 F. Supp. 2d 935, 939, 942 (S.D. Ohio 2011)* (finding that the claim was subject to a six-year statute of limitation); *see also Meade v. Pension Appeals & Review Comm., 966 F.2d 190, 193, 195 (6th Cir. 1992)* [*12] (finding that the claim [**8] was subject to a fifteen-year statute of limitations). Even under the shorter six-year time limit, the Class's claims were timely.

Contrary to Appellants' argument that the Class's claim for the payment of benefits arises from the 1994 Retirement Protection Act ("RPA"), whipsaw actions predate both the RPA and the passage of *§ 1658*. *Thompson, 716 F. Supp. 2d at 762* (finding that RPA "did not 'create a new right' for the plaintiffs that did not previously exist" with respect to a claim involving lump-sum payments. The ability to bring a claim for benefits under *ERISA § 502(a)(1)(B)* was in existence before the RPA.

Furthermore, the RPA did not make any substantive changes, but simply changed the definition of "applicable interest rate." The 1994 RPA requires the calculation of lump-sum payments by using an "applicable mortality table" and an "applicable interest rate" based on thirty-year treasury rates. *Thompson v. Ret. Plan for Emps. of S.C. Johnson & Sons, Inc., 716 F. Supp. 2d 752, 762 (E.D. Wisc. 2010)*.

Because passage of the RPA did not create a new right to bring a whipsaw action, it cannot be said that the Class's claim "arises under" the post-1990 [*13] amendment. The district court correctly concluded that the Class's complaint was timely filed.

*B. Class Certification*

AK Steel and the Plan argue that the district court abused its discretion in granting the Class's motion for class certification. Appellants argue that the district court abused its discretion with respect to the commonality and typicality requirements of *Rule 23(a)* and therefore also abused its discretion in finding that common questions

predominated over questions affecting individuals pursuant to *Rule 23(b)(3)*. We disagree.

To obtain class certification, plaintiffs must show that:

> (1) the class is so numerous that joinder of all members is impracticable; (2) there are questions of law or fact common to the class; (3) the claims or defenses of the representative parties are typical of the claims or defenses of the class; and (4) the representative parties will fairly and adequately protect the interests of the class.

[**9] *Fed. R. Civ. P. 23(a); In re Whirlpool Corp. Front-Loading Washer Prods. Liab. Litig., 678 F.3d 409, 416 (6th Cir. 2012)*. "The proposed class must also meet at least one of the three requirements listed in *Rule 23(b)*." *In re Whirlpool, 678 F.3d at 416* (citing [*14] *Wal-Mart Stores, Inc. v. Dukes, 131 S. Ct. 2541, 2550, 180 L. Ed. 2d 374 (2011))*.

The district court certified the *Schumacher* class by concluding that it satisfied the four prerequisites of *Federal Rule of Civil Procedure 23(a)*--numerosity, commonality, typicality, and adequacy of representation. The two common issues that the district court found appropriate for classwide treatment were:

> (1) whether the anti-alienation provisions of ERISA bar the release of the whipsaw claims at issue in this case when the general releases do not expressly refer to the Retirement Plan, to pension benefits, and/or the ERISA statute; and (2) whether the express terms of the release agreements included any and all claims against the Defendants in this case.

R. 60, at 16. The district court also found that the action could be maintained under *Federal Rule of Civil Procedure 23(b)(3)* because the issue of whether Plaintiffs were entitled to whipsaw benefits predominated over any individual issues involved in calculating the amount of those benefits for each class member.

The district court first determined the scope and validity of the Severance Agreements pursuant to general

contract law. Releases are contracts. 29 Williston [*15] on Contracts § 73:7 (4th ed. 2011). Therefore, the waivers were properly examined under normal contract principles first. *Id.* (citing *Raczak v. Ameritech Corp., 103 F.3d 1257, 1268 (6th Cir. 1997)* ("[A] court should examine waivers and releases 'under normal contract principles[.]'").

Appellants raise two arguments to support the proposition that the releases required individualized review. Both fail because, as the district court determined, the issue of law as to the contracts' scope and validity precluded the need to conduct an individualized review. First, Appellants argue that the district court's decision in the present case is inconsistent with the *West* court's findings that the nature of the releases required individual review. Id. at 19-20. They also argue that the *West* court excluded [**10] Schumacher and the ninety-one others in this class noting that the determination of whether the Releases were knowingly and voluntarily agreed to would require an individualized factual review. *Id.* at 21. Second, Appellants argue that the central question with respect to the enforceability of the release is whether it was made knowingly and voluntarily. *Id.* at 22 (citing *Nicklin v. Henderson, 352 F.3d 1077, 1080 (6th Cir. 2003))*.

Whether [*16] the Severance Agreements were valid--whether they were a violation of ERISA's anti-alienation provisions or were obtained by a breach of fiduciary duties--was a question that the district court properly determined first before inquiring as to the intent of the parties as Appellants suggest it should have. As the district court noted, all of the releases were obtained during the 2003 layoffs and were executed in a short time frame. The critical language of the releases was identical for each plaintiff, and the common questions identified by the district court did not depend upon the intent of each employee. The determination of the scope and validity of the agreements involved common questions of law that lend themselves well to class certification.

Appellants have not shown that the district court abused its discretion in granting class certification. The court was correct to begin by determining the scope and validity of the agreements as a common issue of law for the class certification motion. See *Smilow v. Sw. Bell Mobile Sys., Inc., 323 F.3d 32, 42 (1st Cir. 2003)* (considering the interpretation of a form contract, executed by all class members as the threshold issue as to

whether [*17] common issues of law and fact predominate).

### C. Partial Summary Judgment

AK Steel and the Plan appeal the district court's grant of partial summary judgment on liability in favor of the Class. The district court interpreted the scope of the Severance Agreements, holding that the agreements did not affect pension benefits or preclude pension claims that had not yet accrued at the time the agreements were executed. Upon de novo review, we agree.

[**11] This claim is identical to the claims raised in the *West* litigation. This Court held, in *West*, that a so-called "whipsaw calculation" claim "arises when participants opt to 'cash out' their hypothetical accounts before they reach normal retirement age." *West, 484 F.3d at 400.* In this case, the whipsaw claim could not possibly arise until the moment a class member opted to cash out her pension in lump-sum form. Because none of the Class members requested a lump-sum payment until after the execution of the Severance Agreements, their claims had not accrued. Therefore, the dispositive issue, as the district court correctly recognized, is whether the text of the general Severance Agreements released future ERISA claims.

Paragraph 9 of each agreement [*18] provides the waiver and release clause. It states, in relevant part:

> You waive and release . . . AK Steel Holding Corporation, AK Steel Corporation and its predecessors, and . . . related entities . . . from any and all claims, causes of action, and rights of recovery of any kind . . . whether known or unknown. This waiver . . . also includes but is not limited to any claims, whether known or unknown . . . .

R. 87, at 5.

While the agreement broadly mentions "any and all claims, causes of action, and rights of recovery of any kind," what is not mentioned is critical to the question before the Court. As the district court noted, the agreement does not mention RAPP or the Plan. It does not contain any words that would support a release of future "ERISA" or "pension" claims.[2]

2    Although the releases in some of the Agreements specifically excluded future claims arising under the federal Age Discrimination in Employment Act, in light of our discussion below, we believe this is an insufficient basis for implying waiver of future pension claims arising under ERISA.

The conclusion made by the district court and adopted by this Court is consistent with established law and the public policy concerns [*19] surrounding earned pension rights. *See, e.g., Ruppert v. Alliant Energy Cash Balance Pension Plan, 255 F.R.D. 628, 635 (W.D. Wisc. 2009)* ("[T]o the extent plaintiffs' releases could be construed as releasing defendant from this ERISA suit, the agreement would be unenforceable because [**12] agreements that waive future violations of ERISA are unenforceable . . . ."); *Wright v. Sw. Bell Tel. Co., 925 F.2d 1288, 1293 (10th Cir. 1991)* (holding that a waiver of a right to sue was insufficient to release future ERISA claims where the parties were unaware of such claims when the release was signed); *see also* 29 Williston on Contracts § 73:10 (4th ed.) ("[A] general release will not be construed to bar the enforcement of a claim that had not accrued as of the date of the release."). Appellants rely on a series of cases where courts have held that ERISA claims could be released. As the district court reasoned, the cases cited by AK Steel and the Plan are distinguishable because each case involves ERISA claims that had already accrued.[3] *See Valeck v. Watson Wyatt & Co., 92 F. App'x 270, 273 (6th Cir. 2004)* (finding release effective where the contract specifically released two named individuals, [*20] i.e. "all claims made by [Valeck] or that could have been made by her against [Defendant] . . . ." prior to the execution of the release was executed); *Halvorson v. Boy Scouts of Am., 215 F.3d 1326, 1326 (6th Cir. 2000)* (table) (finding that employee had waived his medical benefits and disability claims because his medical issues were known before signing the release); *see also Howell v. Motorola, Inc., 633 F.3d 552, 556, 558 (7th Cir. 2011)* (noting that the events leading to the cause of action occurred before the release was signed). Appellants also rely on cases where future ERISA claims were released. Those cases, however, involved an explicit reference to "ERISA" in the agreement--a critical distinction from the present case. *See Goepfert v. Trustmark Ins. Co., 541 F. Supp. 2d 1052, 1054 (E.D. Wisc. 2008)* (quoting the language of the release which specifically includes claims arising from ERISA); *see also Sullivan v. CAP Gemini Ernst &*

*Young U.S., 573 F. Supp. 2d 1009, 1021 n.16 (N.D. Ohio 2008)* (quoting the language of the release which explicitly included "any and all rights or claims [. . .] arising under [. . .] [ERISA]") (alterations in original).

> 3   While the district court [*21] and the parties detail numerous grounds upon which the finding on liability was correct, we decline to address the remaining arguments; the reasoning here is dispositive.

The Class's future pension claims were not released as a matter of law because the whipsaw claims had not accrued at the time of the execution of the Severance [**13] Agreements and because the scope of the contracts did not relate to future ERISA claims.[4]

> 4   Consequently, Appellants argument that the district court abused its discretion by not allowing discovery as to whether each Class member knowingly and voluntarily waived the claims is moot.

*D. Pre-judgment Interest*

The *Schumacher* Plaintiffs argue that the district court abused its discretion by awarding pre-judgment interest at the statutory rate under *28 U.S.C. § 1961(a)*, which at the time was 0.12%. We agree. The district court's failure to consider the case-specific factors and its mechanical application of the statutory rate under *§ 1961* constituted an abuse of discretion.

"[T]he district court may [award pre-judgment interest] at its discretion in accordance with general equitable principles." *Rybarczyk v TRW, Inc., 235 F.3d 975, 985 (6th Cir. 2000)* (quoting *Ford v. Uniroyal, 154 F.3d 613, 616 (6th Cir. 1998))*. [*22] A proper determination of pre-judgment interest involves a consideration of various case-specific factors and competing interests to achieve a just result. While we have upheld awards of pre-judgment interest calculated pursuant to *28 U.S.C. § 1961*, a mechanical application of the rate at the time of the award amounts to an abuse of discretion. *See Rybarczyk, 235 F.3d at 985-87.*

One purpose of an award of pre-judgment interest is to compensate plaintiffs for the "lost interest value of money wrongly withheld." *Id. at 985.* Courts consider compensation for the "time value of the lost money as well as for the effects of inflation." *United States v. City*

*of Warren, 138 F.3d 1083, 1096 (6th Cir. 1998).* An award that fails to make the plaintiff whole due to an inadequate compensation for her lost use of money frustrates the purpose of ERISA's remedial scheme. This is also true of an award that is excessive. *See Ford, 154 F.3d at 618.* "Our court and others have . . . upheld awards of pre-judgment interest that were tied to prevailing market rates, thus reflecting what the defendants would have had to pay in order to borrow the money at issue." *Rybarczyk, 235 F.3d at 986.*

[**14]   An excessive pre-judgment [*23] interest award may contravene ERISA's remedial goal of simply placing the plaintiff in the position he or she would have occupied but for the defendant's wrongdoing. Similarly, an exceedingly low pre-judgment interest rate fails to make the plaintiff whole. *Ford, 154 F.3d at 618.* Accordingly, courts must strike a balance between making sure not to impose a punitive measure and allowing a Plan or Fund to "retain the interest it earned on funds wrongfully withheld would be to approve of unjust enrichment." *Rybarczyk, 235 F.3d at 985-86* (internal citation and quotation marks omitted).

In the *West* case, the court awarded pre-judgment interest at the rate provided by *28 U.S.C. § 1961(a)*. Section *1961(a)* is the one-year Treasury rate for the week that precedes a court's final judgment. At the time the *West* judgment was awarded, the rate was 4.7%. At the time of the district court's judgment in the present case, the rate was at an all-time low of 0.12%.

Here, if the 0.12% rate were to stand, AK Steel and the Plan would essentially be rewarded for their wrongdoing. There are at least three examples that highlight the potential injustice that could result if the district court's award were affirmed. [*24] First, AK Steel's rate on return (6.55%) and its borrowing costs (7.75%) were much higher than the 0.12% it has been ordered to pay. Allowing such a disparity would result in an unfair economic benefit to Appellants. *See Rybarczyk, 235 F.3d at 986* ("[A] requirement that [defendants] pay the actual rate [on return] merely deprives [defendants] of [their] profit on the wrongfully denied benefits."). Second, the *West* and *Schumacher* plaintiffs are identical plaintiffs. Both sets of plaintiffs worked for the same company, brought the same whipsaw calculation claims, during the same period, and were awarded damages under the same calculation. Nevertheless, the *West* class members received pre-judgment interest of 4.7%, while

the *Schumacher* plaintiffs received only 0.12%. Such an absurd result amounts to a reversible error. *See Ford, 154 F.3d at 618-19*. Third, the Consumer Price Index measured the annual inflation rate at approximately 2.75%. In *City of Warren*, this Court held that a district court's award of pre-judgment interest that only compensated the plaintiffs for the rate of inflation [**15] constituted an abuse of discretion where it failed to adequately compensate them for the lost use [*25] of their money. *City of Warren, 138 F.3d at 1096*.

Here, the district court's award of an "exceedingly low pre-judgment interest rate fail[ed] to make the [Class members] whole by inadequately compensating [them] for the lost use of money." *See Ford, 154 F.3d at 618*. The district court was concerned with an award that would produce a "windfall" that would punish AK Steel and the Plan, although it seems that it did the opposite and created a windfall in favor of Appellants' wrongdoing. *See Rybarczyk, 235 F.3d at 987* ("If the award . . . were lower than [defendant's] actual rate of return, it is [defendant] that would arguably receive a windfall."). Because the award of 0.12% by the district court would inadequately compensate the Class and unjustly enrich Appellants for their wrongdoing, the

district courts mechanical award of pre-judgment interest rate pursuant to § 1961 constituted an abuse of discretion. *See id. at 985* ("[W]e look with disfavor on simply adopting . . . interest rates."). While district courts may fashion an award in their sound discretion, such an award must consider the case-specific factors such as, but not limited to: the remedial goal to place the plaintiff in [*26] the position that he or she would have occupied prior to the wrongdoing; the prevention of unjust enrichment on behalf of the wrongdoer; the lost interest value of money wrongly withheld; and the rate of inflation. Here, the district court failed to do so. We, therefore, reverse the district court's application of the § 1961 rate and remand on this issue. On remand, the district court shall fashion an award that considers and balances the interests involved in determining a just pre-judgment interest award.

## CONCLUSION

For the foregoing reasons, we **REVERSE** and **REMAND** the district court's award of pre-judgment interest at the rate of 0.12% and **AFFIRM** the district court's judgment in all other respects.