UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF MICHIGAN
SOUTHERN DIVISION

JOHN LOFFREDO, et al.,

        Plaintiffs,

v.

                              Case No. 10-14181
DAIMLER AG, et al.,                   Honorable Julian Abele Cook, Jr.

        Defendants.

## ORDER

The Plaintiffs in this consolidated action[1] are retired executives of the Chrysler Corporation ("Chrysler") and/or the DaimlerChrysler Corporation ("DaimlerChrysler"). Their amended complaint decries acts of age discrimination arising from the Plaintiffs' participation in the Supplemental Executive Retirement Plan ("SRP") of Chrysler and/or DaimlerChrysler.

The Defendants are (1) Daimler AG ("Daimler"), a stock corporation organized under the laws of Germany; (2) State Street Bank and Trust Company ("State Street"), a Massachusetts trust company; (3) Thomas LaSorda, a Michigan citizen who acted as a director, manager, trustee, or some other position of authority with DaimlerChrysler during all of the times that are relevant to this litigation; and (4) John Doe/Mary Roe, unidentified directors, managers, trustees, or other officers of DaimlerChrysler[2].

---

[1]Case number 10-cv-14214, *Loffredo et al. v. Cerberus Capital Management, L.P. et al.* was administratively closed this Court which consolidated it with *Loffredo et al. v. Daimler AG et al.* under case number 10-cv-14181.

[2]Dieter Zetsche, a German resident who acted as a director, manager, trustee, or other officer of DCC, was previously dismissed as a party to this litigation.

Currently before the Court are motions to dismiss the Plaintiffs' amended complaint filed by (1) Daimler; (2) State Street; and (3) LaSorda.

I.

The facts as presented in the Plaintiffs' complaint are as follows. In 1998, Chrysler merged with Daimler-Benz AG to form a new company called Daimler Chrysler AG. As part of the merger, Chrysler was renamed DaimlerChrysler, which became a wholly-owned subsidiary of Daimler Chrysler AG and the employer of Chrysler's employees.

On August 3, 2007, Daimler Chrysler AG sold a majority interest in DaimlerChrysler to Cerberus Capital Management, LP ("Cerberus"). Under this new ownership, DaimlerChrysler became known as Chrysler LLC. After the sale, Daimler Chrysler AG changed its name to its current form, Daimler AG.

The Plaintiffs in this action are all former employees of Chrysler, DaimlerChrysler, or subsidiaries of these companies who were employed prior to 2007. While employed, the Plaintiffs participated in an employee benefit plan that provided retirement benefits to eligible employees. The plan was known as the Supplemental Executive Retirement Plan ("SRP"). Under the terms of the plan, the Plaintiffs were entitled to receive a monthly payment from the SRP upon their retirement. The SRP was not federally insured by the United States Pension Benefit Guaranty Corporation.

Chrysler established a trust to manage payment of SRP retirement benefits. The trust was administered by State Street and Lasorda. According to the complaint, the trust was believed to have assets in excess of $200 million in August 2007. At the time of Chrysler's bankruptcy in 2009, the trust contained only $117,163.

The Plaintiffs allege that beginning in 2005, the Defendants knew that

DaimlerChrysler/Chrysler LLC was in danger of filing bankruptcy and that if the company did file for bankruptcy protection, the trust assets would become part of the bankruptcy estate and be subject to the claims of unsecured creditors. To avoid such an outcome, LaSorda used assets of the trust to purchase annuities or otherwise secure the SRP retirement benefits of (a) current employees of DaimlerChrysler and (b) certain retired employees. He did not, however, similarly securitize the benefits of the majority of former employees who had retired between 1998 and 2006 - a group that, on average, was older than the group of still-active employees. The Plaintiffs are included in this group.

The action to securitize SRP retirement benefits only for actively employed SRP participants was allegedly presented to and approved by the Daimler Chrysler AG Board of Management in Germany.

On September 10, 2010, the Plaintiffs initiated a lawsuit in the Circuit Court of Wayne County, Michigan, alleging that the action to securitize only some benefits violated multiple laws. On October 19, 2010, the Daimler removed the case to this Court. 28 U.S.C. §§ 1331,1332, 1441, 1453.

The Defendants proceeded to file motions to dismiss the Plaintiffs' original complaint. On June 6, 2011, the Court granted those motions. The Plaintiffs appealed and on September 25, 2012, the Sixth Circuit reversed the dismissal of the state-law age-discrimination claim but affirmed the dismissal of all remaining claims.

On February 22, 2013, the Plaintiffs requested leave from this Court to file an amended complaint. This request was granted as to the age discrimination claim but denied as to claims related to the rabbi trust.

3

The Plaintiffs filed an amended complaint on August 30, 2013. On September 13, 2013, the Defendants filed separate motions to dismiss the amended complaint. Those motions are now fully briefed and ready for disposition.

II.

When considering a motion to dismiss under Rule 12(b)(6) of the Federal Rules of Civil Procedure, the Court accepts the plaintiff's well-pleaded allegations as true and should construe each of them in a light that is most favorable to it. *Bennett v. MIS Corp.*, 607 F.3d 1076, 1091 (6th Cir. 2010). However, this assumption of truth does not extend to the plaintiff's legal conclusions because "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements, do not suffice." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). The complaint "must contain either direct or inferential allegations respecting all material elements to sustain a recovery under some viable legal theory." *Bishop v. Lucent Techs., Inc.*, 520 F.3d 516, 519 (6th Cir. 2008) (citation and internal quotation marks omitted).

In order to survive an application for dismissal, the complaint must allege "enough facts to state a claim to relief that is plausible on its face." *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007). To meet this standard, the "plaintiff [must] plead[ ] factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Iqbal*, 556 U.S. at 678. In essence, "[a] pleading that states a claim for relief must contain . . . a short and plain statement of the claim showing that the pleader is entitled to relief." Fed. R. Civ. P. 8(a)(2).

In considering a 12(b)(6) motion, "documents attached to the pleadings become part of the pleading and may be considered." *Commercial Money Ctr., Inc. v. Ill. Union Ins. Co.*, 508 F.3d 327, 335 (6th Cir. 2007) (citing Fed. R. Civ. P. 10(c)). "In determining whether to grant a Rule 12(b)(6)

motion, the court primarily considers the allegations in the complaint, although matters of public record, orders, items appearing in the record of the case, and exhibits attached to the complaint, also may be taken into account." *Amini v. Oberlin Coll.*, 259 F.3d 493, 502 (6th Cir. 2001) (emphasis omitted)). Moreover, "documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in the plaintiff's complaint and are central to [the plaintiff's] claim." *Weiner, D.P.M. v. Klais & Co.*, 108 F.3d 86, 88 n.3 (6th Cir. 1997); *see also Bassett v. NCAA*, 528 F.3d 426, 430 (6th Cir. 2008). Supplemental documents attached to the motion to dismiss do not convert the pleading into one for summary judgment where the documents do not "rebut, challenge, or contradict anything in the plaintiff's complaint." *Song v. City of Elyria*, 985 F.2d 840, 842 (6th Cir. 1993) (citing *Watters v. Pelican Int'l, Inc.*, 706 F. Supp. 1452, 1457 n.1 (D. Colo. 1989)).

III.

In their amended complaint, the Plaintiffs allege that the Defendants violated Michigan's Elliot-Larsen Civil Rights Act ("ELCRA") by securitizing the retirement benefits of current employees but not those of retired employees. Each of the Defendants has filed a motion to dismiss the Plaintiffs' amended complaint. The Court first turns to LaSorda's motion. He contends that the Plaintiffs' state law claim should be dismissed because it (1) is preempted by the Employee Income Retirement Security Act of 1974, Pub. L. 93-406, 88 Stat. 829 (codified as amended at 29 U.S.C. § 1001 et seq.) ("ERISA") and (2) fails to state a claim. These arguments are adopted by both State Street and Daimler. The Plaintiffs counter that their ELCRA claim escapes preeemption by virtue of ERISA's savings clause, 29 U.S.C. § 1144(d), because the ELCRA claim mirrors a federal claim under the ADEA. They also maintain that they have successfully pled a claim of age discrimination.

In its June 6, 2011 order, the Court determined that the Plaintiffs' age discrimination claim was preempted by ERISA. (ECF No. 47). The Sixth Circuit reversed this ruling, holding that the savings clause provided an exception. *Loffredo v. Daimler*, 500 F. App'x 491, 498 (6th Cir. Sept. 25, 2012). This clause states that nothing in the ERISA statute "shall be construed to alter, amend, modify, invalidate, impair, or supersede any law of the United States." 29 U.S.C. § 1144(d). As interpreted by the Supreme Court, ERISA does not preempt (1) other federal laws or (2) state laws that provide a complementary mechanism to enforce federal law. *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 102 (1983). In this case, the Sixth Circuit held that "[s]ection 1144(d) thus preserves state-law claims from preemption to the extent they mirror ADEA claims." *Loffredo*, 500 F. App'x at 498.

> The plaintiffs' age-discrimination claim falls into this category. [The Plaintiffs] argue that securitizing the retirement benefits of active employees but not most retired employees had a disparate impact on older beneficiaries. The ADEA covers such claims. *See Smith v. City of Jackson*, 544 U.S. 228, 243 (2005). Nor is the claim an implausible one: The securitized beneficiaries on average were younger than the retirees whose benefits were not secured.

*Id.*

### A. ERISA Preemption

### 1. Agent Liability

The Defendants first contend that the Plaintiffs' state law age discrimination claim is preempted by ERISA because it does not mirror an ADEA claim. First, they submit that the Plaintiffs assert a theory of agency liability and the ADEA does not impose liability on agents.

The ADEA applies only to employers. 29 U.S.C. § 623(a) ("It shall be unlawful for *an employer*" to engage in specified acts of discrimination (emphasis added)). The statutory definition of "employer" encompasses "a person engaged in an industry affecting commerce who has twenty or more employees" and includes "any agent of such a person." 29 U.S.C. § 630(b). The Plaintiffs

6

acknowledge that LaSorda is not an employer, but they contend that he is liable as the employer's agent.

When confronted with the question of whether this clause imposes liability on individual employee supervisors acting as agents, the Sixth Circuit acknowledged that "a narrow, literal reading of the agent clause does imply that an employer's agent is a statutory employer for purposes of liability;" however, the court declined to impose such a reading on the statute. *Wathen v. General Elec. Co.*, 115 F.3d 400, 405 (6th Cir. 1997). Rather, the *Wathen* court determined that "Title VII's remedial provisions are incompatible with the imposition of liability on individual employees." *Id.* The court concluded that "the purpose of imposing liability on an employer and its agent was simply to define the scope of an employer's derivative liability." *Hiler v. Brown*, 177 F.3d 542, 546 (6th Cir. 1999). Thus, an individual, such as LaSorda, may not be held liable for discrimination under the ADEA. *Wathen*, 115 F.3d at 405. As the Plaintiffs' discrimination claim against LaSorda is not recognized by the ADEA, it does not mirror a federal claim. As a result, the ERISA savings clause does not apply, and the claim against LaSorda is preempted.

The Plaintiffs maintain that this Court is precluded from reaching this conclusion or even examining the issue in the first instance by operation of the Sixth Circuit's mandate and the law of the case. "[W]hen a case has been remanded, the trial court must upon the remand proceed in accordance with the mandate and law of the case as established by the appellate court." *Petition of U. S. Steel Corp.*, 479 F.2d 489, 493 (6th Cir. 1973). In other words, the trial court is precluded from reconsideration of issues that were "necessarily decided" in the earlier appeal. *Kavorkian v. CSX Transp., Inc.*, 117 F.3d 953, 959 (6th Cir. 1997). The issues may have been decided either expressly or implicitly. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997). In order to be

considered part of the law of the case, an issue must have been "fully briefed and squarely decided." *Perkins v. Am. Elec. Power Fuel Supply, Inc.*, 91 F. App'x 370, 374 (6th Cir. 2004).

When this Court's Order was appealed to the Sixth Circuit, State Street argued to the panel that it could not be held liable because it was not the Plaintiffs' employer. The Plaintiffs countered that State Street must be considered an "employer" for purposes of the ADEA and ELCRA because it acted as the agent of the Plaintiffs' employer. The Sixth Circuit ruled that "Michigan and federal law extend liability to an employer's 'agent.'" *Loffredo*, 500 F. App'x at 498-99. According to the Plaintiffs, this determination by the Sixth Circuit conclusively resolves the issue of agency liability for all of the Defendants. This Court disagrees. The Sixth Circuit only addressed the agency liability of State Street, which is not an individual. It never considered whether LaSorda, an individual, may be held liable as an agent. In addition, the assertion that federal law extends liability to agents was made without citation to any supporting case law and no mention was made of *Wathen*. To the extent that this statement contradicts the *Wathen* court's determination that liability may not be imposed on an individual agent, this Court must follow *Wathen*. *United States v. Moored*, 38 F.3d 1419, 1421-22 (6th Cir. 1994) (district court not required to follow law of case or mandate rule where "clearly erroneous decision would work manifest injustice"). As a result, LaSorda's motion to dismiss must be, and is, granted.

State Street and Daimler, however, are not individual employees. Inasmuch as the reasoning of *Wathen* focuses almost exclusively on the liability of individuals, the extent to which this holding extends to institutional agents is unclear. Construing *Wathen* narrowly, one might distinguish between the liability of individual agents and that of institutional agents. However, the text of the ADEA does not appear to provide for such a distinction. It reads simply that an employer "includes

any agent" of an employer. By ruling that the actions of an agent merely delineate the extent of an employer's derivative liability, the *Wathen* court appears to decline to extend immunity to any agents, including institutional entities. The Plaintiffs have not pointed to - nor is the Court aware of any - cases in which a court has found an institutional agent liable for its discriminatory actions under the ADEA. Thus, if resolving this issue on a blank slate, this Court would be inclined to construe *Hiler* and *Wathen* broadly and conclude that the actions of any agent - including institutional agents - simply define the scope of an employer's derivative liability.

However, given the procedural history of the case, this Court may not consider this issue without taking account of the Sixth Circuit's mandate. In its order, the Sixth Circuit expressly held that State Street may be held liable as an agent under the ADEA. With that backdrop, this Court must follow the mandate unless an exception applies. Here, no Sixth Circuit case directly holds that an institutional entity may not be held liable as an agent. In fact, in a case decided approximately five months after *Wathen*, the Sixth Circuit declined to hold that institutional agents may never be held liable for their discriminatory actions. In *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997), the plaintiff alleged that an institutional entity, Tennessee Technological University ("TTU"), was liable under the ADEA as the agent of Barnes & Noble. *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997). Although *Wathen* was already the law of the circuit, the *Swallows* court did not cite the case for the broad proposition that agents may never be liable. Rather, the panel considered the merits of whether TTU fit the definition of "agent" under the ADEA and concluded that it did not. While hardly dispositive, the approach of the *Swallows* court at least leaves open the possibility that an institutional agent may be held liable under the ADEA. Therefore, the Court is reluctant to contradict the mandate issued

9

by the Sixth Circuit. As a result, it must conclude that State Street and Daimler may be held liable under the principles of agency.

Defendant State Street contends that it is not an agent within the context of ADEA or ELCRA. "An agent within the context of the ADEA and other employment discrimination statutes must be an agent with respect to employment practices." *Swallows v. Barnes & Noble Book Stores, Inc.*, 128 F.3d 990, 996 (6th Cir. 1997). Based on the allegations in the complaint, it does not appear that State Street fits this definition. However, in the present case, the Sixth Circuit expressly held that the allegation that State Street acted as an agent in this case is sufficient to withstand a 12(b)(6) motion. *Loffredo*, 500 F. App'x at 498-99. This Court is bound by the Sixth Circuit's mandate and the law of the case. *Hanover Ins. Co. v. Am. Eng'g Co.*, 105 F.3d 306, 312 (6th Cir. 1997).

### 2. Disparate Impact

The Defendants next contend that the Plaintiffs' state-law claim does not mirror a federal claim because the ADEA does not recognize disparate impact claims when the alleged discrimination is "with respect to compensation, terms, conditions, or privileges of employment." 29 U.S.C. § 623(a)(1). Section 4(a) of the ADEA makes it unlawful for an employer:

> (1) to fail or refuse to hire or to discharge any individual or otherwise discriminate against any individual with respect to compensation, terms, conditions, or privileges of employment, because of such individual's age; [or]
>
> (2) to limit, segregate, or classify his employees in any way which would deprive or tend to deprive any individual of employment opportunities or <u>otherwise adversely affect</u> his status as an employee, because of such individual's age . . . .

29 U.S.C. § 623(a) (emphasis added). In *Smith v. City of Jackson*, 544 U.S. 228 (2005), the Supreme Court held that the ADEA authorizes claims of disparate impact. However, the *Smith*

Court limited such claims to those raised under § 4(a)(2) because the language of § 4(a)(2) "focuses on the *effects* of an action on the employee rather than the motivation for the action of the employer." *Id.* at 236 (emphasis added). Section 4(a)(1), on the other hand, lacks any language addressing the effects of an employment action. The Sixth Circuit has recognized that disparate impact claims are limited to causes of action under § 4(a)(2). *Aldridge v. City of Memphis*, 404 F. App'x 29, 40 (6th Cir. 2010).

According to the Defendants, any discrimination with respect to pension benefits in this case must fall within § 4(a)(1), precluding a disparate impact claim. They first contend that the Plaintiffs' claim cannot fit into the language § 4(a)(2) because any decision regarding the pensions did not affect the Plaintiffs' employment opportunities or their "status as an employee." The Defendants note that the Plaintiffs in their amended complaint specifically allege that the Defendants discriminated "in terms of their compensation and privileges of employment," which falls within the prohibitions listed in § 4(a)(1). The Defendants also contend that at the time the pension assets were securitized, the Plaintiffs were not currently employed and therefore cannot be considered "employees." Therefore, according to the Defendants, the Plaintiffs, as former employees, may only bring their claim under § 4(a)(1), which is not limited to "employees" but rather covers all "individuals."

The Court will reject these arguments. The Supreme Court has interpreted an almost identical definition of "employer" contained in Title VII to include former employees. As the Supreme Court noted in *Robinson v. Shell Oil Co.*, 519 U.S. 337 (1997), the distinction between the terms "individual" and "employee" does not provide any insight into whether the term "employee" includes former employees. *Robinson*, 519 U.S. at 345; *see also Erie Cnty. Retirees*

11

*Ass'n v. Cnty of Erie*, 200 F.3d 193 (3rd Cir. 2000). Both Title VII and the ADEA are analyzed under the same framework.

The Defendants contend that the Plaintiffs' claim must be dismissed because they do not allege that they were adversely affected *as employees*. The Court disagrees. The Plaintiffs allege that the Defendants' actions protected the benefits of current employees but not those of former employees, thus creating two tiers. One definition of "status" is "social or professional rank, position, or standing; a person's relative importance." Oxford English Dictionary, Third Edition, 2012. Here, if the Plaintiffs' allegations are true, the Defendants' actions affected the status of the former employees by placing them on a lower tier than current employees. Thus among all of the "employees," the former employees were treated as a lower class than current employees. As a result, the Plaintiffs' allegations fit squarely within the prohibitions of § 4(a)(2).

The Plaintiffs cite to *Aldridge v. City of Memphis*, No. 05-2966-STA-dkv, 2008 WL 2999557, at *5-6 (6th Cir. July 31, 2008) for the proposition that in order to raise a claim for disparate impact, the Plaintiffs must allege an employment practice that affects all employees rather than a limited segment. In *Aldridge*, the Sixth Circuit did assert that the Defendant's decision to abolish the rank of police captain did not fall under § 623(a)(2) because it was not part of an employment plant that applied to all employees. *Id.* at *6. However, the *Aldridge* court appeared to have reached this conclusion based on an analysis of *EEOC v. Allstate Ins. Co.*, 528 F.3d 1042, 1047 (8th Cir. 2008). This Court does not find that reasoning persuasive. The relevant issue addressed by the Eighth Circuit in *Allstate* was whether a certain rehire policy enacted by Allstate should be considered a "hiring" policy or an "employment" policy. If the rehire policy were considered to be a "hiring" policy, it could not serve as the basis for a disparate impact claim

because discrimination in a hiring process definitively falls under § 4(a)(1). *Allstate*, 528 F.3d at 1047. The *Allstate* court decided that the rehire policy should be considered an "employment" practice because it was part of a firmwide initiative that affected all employees - including current employees - and as a result was not limited to instances of "hiring." Thus, the importance of whether the challenged policy affected "all employees" was limited to the facts of that case. Those facts have no relevance to the circumstances of this case, where neither party contends that the alleged discriminatory actions were related to hiring practices. As the *Aldridge* court did not offer any other justification for determining that a claim of disparate impact must affect all employees, this Court will decline to apply such a rule.

### 3. Statue of Limitations

The Defendants next contend that the Plaintiffs' ELCRA claim is preempted because it was filed outside of the statute of limitations period of the ADEA. This particular issue was not presented to the Sixth Circuit. As a result, it falls outside of the Sixth Circuit's mandate and is not subject to the law of the case. *Kavorkian*, 117 F.3d at 959. This Court is free to address the issue.

In *Shaw*, the Supreme Court first held that ERISA preempts state law with only narrow exceptions. 463 U.S. at 102. The relevant exception here is limited to provisions of state laws which, if preempted, would impair the operations of a federal law. *Id.* State laws which mirror the ADEA are such laws. *Loffredo*, 500 F. App'x at 498. However, the *Shaw* Court declined to read the savings clause to act as a general exception to preemption. *Shaw*, 463 at 104. Instead, the Court expressed a willingness to consider partial preemption. *Id.* at 103. Specifically, the *Shaw* Court held that state laws are exempt from preemption to the extent that they prohibit conduct that is also unlawful under the relevant federal law. *Id.* When the challenged conduct is prohibited by state law

but lawful under the ADEA, a state law claim will be preempted by ERISA because in that case, preemption will not impair the operation of the ADEA. *Id.*

Relying on *Nolan v. Otis Elevator Co.*, 505 A.2d 580 (N.J. 1986) and *Warren v. Oil, Chemical and Atomic Workers*, 729 F. Supp. 563 (E.D. Mich. 1989), the Defendants ask this Court to extend the holding of *Shaw* to conclude that the Plaintiffs' failure to follow ADEA procedural requirements renders their claim preempted by ERISA. Here, the Plaintiffs' claim was filed outside of the statute of limitations imposed by the ADEA. The Plaintiffs do not contend that equitable considerations such as tolling or estoppel would be relevant if this claim were filed under the ADEA. As a result, the Plaintiffs' claim is not viable under the ADEA and preemption of such a claim could in no way be said to impair the operation of the ADEA. *Warren*, 729 F. Supp. at 567; *Nolan*, 505 A.2d at 588. This Court finds *Nolan* and *Warren* to be persuasive. For the reasons stated in *Nolan* and *Warren*, the Plaintiffs' ELCRA claim is preempted by ERISA. As a result, the Plaintiffs' amended complaint must be dismissed. For the sake of completeness, however, the Court will briefly discuss the remaining issues presented by the Defendants' motions.

### B. Failure to State a Claim

The Defendants next contend that the Plaintiffs have failed to successfully plead a prima facie ADEA claim because they do not: (1) identify a specific employment practice and (2) allege statistics demonstrating an adverse impact on a protected group, or (3) allege an adverse impact that falls on a protected group under the ADEA. These issues were raised by Daimler and Lasorda in briefs submitted to the Sixth Circuit. *See* Br. Defendant-Appellee Daimler AG 55; Br. Appellee Thomas Lasorda 34. The panel either explicitly or implicitly rejected them. Order, Sept. 25, 2012, at 13 (ECF No. 54). The panel determined that the Plaintiffs' age discrimination claim is

14

sufficiently pled to survive a motion to dismiss. Under the mandate and the law of the case, this Court may not revisit this ruling.

### C. State Street's Motion to Dismiss

In its motion to dismiss, State Street contends that it is not an agent under either the ADEA or ELCRA. The Plaintiffs maintain that the Court must follow the mandate of the Sixth Circuit, which has already determined that the Plaintiffs have sufficiently alleged that State Street is an agent. As noted above, the Sixth Circuit determined that the allegation that State Street is an agent is sufficient to survive a motion to dismiss. This Court must follow the spirit and the text of the Sixth Circuit's mandate and is precluded from revisiting this issue.

### D. Daimler's Motion to Dismiss

In its motion, Daimler first contends that it is not the Plaintiffs' employer and therefore cannot be held liable under the ADEA. The Plaintiffs, however, allege that Daimler is liable as an agent, not as the employer. The Sixth Circuit's ruling regarding the liability of State Street is equally applicable in the case of Daimler. As discussed above, this Court will not revisit that ruling.

Daimler next contends that it may not be held liable because the ADEA does not apply to foreign corporations. The applicable statutory language states, "[t]he prohibitions of [the ADEA] shall not apply where the employer is a foreign person not controlled by an American employer." 29 U.S.C. § 623(h)(2). Both parties agree that Daimler AG, a German stock corporation "organized under the laws of the Federal Republic of Germany," is a "foreign person" under the ADEA. (Def.'s Br. Dismiss 9, Sept. 13, 2013, ECF No. 76); *see* 29 U.S.C. §630(a). The parties disagree, however, whether the statute encompasses the domestic operations of foreign corporations.

The Defendants proffer that a literal reading of this provision suggests that the ADEA does

not apply to the domestic operations of foreign employers. The Plaintiffs, on the other hand, rely on *Morelli v. Cedel*, 141 F.3d 39 (2d Cir. 1998), in which the Second Circuit held that the ADEA applies to foreign firms operating on United States soil. 141 F.3d at 44.

In *Morelli*, the plaintiff, a former employee, alleged that her direct employer, a foreign corporation, violated the ADEA. The Second Circuit examined the historical context of § 623(h)(2) in order to determine its meaning. Noting that the provision was part of amendments made to the ADEA in 1984, the *Morelli* court determined that "the purpose of adding this exclusion was to limit the reach of an extraterritorial amendment" in order to limit American companies abroad while being mindful of sovereignty with respect to foreign companies. *Id*. at 42, 43 ("The other 1984 amendments . . . conform to the ADEA's reach to "the well-established principle of sovereignty, that no nation has the right to impose its labor standards on another country."). Further, "[t]here is no evidence in the legislative history that these amendments were intended to restrict the application of the ADEA with respect to the *domestic* operations of foreign employers." *Id*. at 43.

The *Morelli* court also looked to the plain language of corresponding "foreign-employer" exclusions in similarly postured statutes, namely, Title VII of the Civil Rights Act of 1964[3] and the Americans with Disabilities Act of 1990,[4] which indicate "that a foreign employer's domestic operations are not excluded from the reach of those statutes."[5] *Morelli*, 141 F.3d at 43. Moreover,

---

[3]42 U.S.C. §§2000e-2000e-17.

[4]42 U.S.C. §12101-12213.

[5]"The Title VII and ADA exclusions are expressly limited to the 'foreign operations of an employer that is a foreign person not controlled by an American employer,' 42 U.S.C. §§ 2000e-1(c)(2), 12112(c)(2)(B), so these employment discrimination statutes would apply to a foreign company's domestic operations." *Morelli*, 141 F.3d at 43.

the E.E.O.C., the agency charged with the enforcement of the ADEA, states that ADEA generally applies "to foreign firms operating on U.S. soil." *Id*. at 44 (quoting E.E.O.C. Policy Guidance, N-914.039, Empl. Prac. Guide (CCH) 5183, 6531 (Mar. 3, 1989). The Court finds *Morelli* persuasive and adopts its reasoning.

The Defendant asserts that the present case is more analogous to *Haugh v. Schroder Inv. Mgmt. N. Am. Inc.*, 02-7955, 2003 WL 21146667 (S.D.N.Y. May 14, 2003), and *Celmer v. Livingston Intern., Inc.*, 12-CV-00539, 2013 WL 951530 (W.D.N.Y Mar. 12, 2013), which interpret the ADEA to exclude all foreign employers not controlled by American companies from liability. However, the legal theory employed by the Plaintiffs in this case is distinguishable. In *Haugh* and *Celmer*, the plaintiffs were employed by a domestic subsidiary of a foreign corporation and unsuccessfully argued that the foreign parent company is liable under the ADEA through the single employer doctrine.[6] However, unlike *Haugh* and *Celmer*, the Plaintiffs in this case do not contend that Daimler is liable as a single employer. Rather, they submit that Daimler is liable through the principles of agency. Daimler's motion to dismiss the Plaintiffs' amended complaint on the ground that the ADEA does not apply to foreign corporations is denied.

IV.

For the reasons that have been set forth above, the Court grants LaSorda's and State Street's motions to dismiss (ECF Nos. 74, 75). Daimler's motion to dismiss is granted, while its motion to strike is denied as moot. (ECF No. 76) .

---

[6]Under the "single employer/integrated enterprise doctrine . . . two entities will be regarded as a single employer subject to joint liability for employment related acts." *Celmer v. Livingston., Inc.,* No.12-CV-00539 2013 WL 951530, at 3 (Mar. 12, 2013) (quoting *EEOC . Everydry Mktg. & Mgmt., Inc.*, No. 01-CV-6329CJS, 2005 WL 231056 (W.D.N.Y. Jan. 31, 2005)).

IT IS SO ORDERED.

Date: September 22, 2014                              s/Julian Abele Cook, Jr.
                                                     JULIAN ABELE COOK, JR.
                                                     U.S. District Judge

### CERTIFICATE OF SERVICE

The undersigned certifies that the foregoing Order was served upon counsel of record via the Court's ECF System to their respective email addresses or First Class U.S. mail to the non-ECF participants on September 22, 2014.

                                                     s/ Kay Doaks
                                                     Case Manager